## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### STONESTREET AND AL. V. DOYLE AND ALS.

#### Absent, *Moncure, P.**

#### March 10.

1. A devise of land to certain persons as trustees to build a school-house for the purpose of a free school, and further extending the education of poor children, the testator not contemplating that a charter of incorporation shall be obtained for it, is null and void at law, on the ground of the uncertainty of the beneficiaries intended.

2. Where a specific devise of real estate fails of taking effect, the real estate does not pass under the residuary clause of the will, to the residuary devisee; but it passes to the heirs of the testator, as property not disposed of by the will.

3. In an action of ejectment, where the defendants rely upon their adversary possession of the premises, they must show not only entry, but they must show that their possession has been continuous during a period necessary to give title under the statute of limitations. A break in the possession restores the seizin of the true owner.

4. The possession of one joint tenant, tenant in common, or coparcener, is *prima facie* the possession of all the other co-tenants; and the mere possession of the one will not be taken to be adverse to the title and possession of the other. Yet if the defendants prove actual ouster or other notorious act or acts, amounting to a total denial of the plaintiffs' rights as co-tenants, and of such a character as to afford direct or presumptive proof that the other co-tenants or plaintiffs had had knowledge of the claim of exclusive ownership thus set up and held by the defendants, or those under whom they claim, such possession of the land in suit held continuously and uninterruptedly under such circumstances under color of title for the length of time prescribed by law, constitutes adverse possession, and will ripen into a good and sufficient title in the defendants. *Quære:* If a mere claim of title, as distinguished from color, would be sufficient?

---

* Judge *Moncure* was not present at this term of the court.

Stonestreet and al. v. Doyle and als.

5. In ejectment between co-tenants, where the defendants rely upon adversary possession, and acquiescence by the plaintiffs, letters by a party under whom defendants claim, and also a correspondence between one of the plaintiffs and the agent of the defendant, may be competent evidence to show for what purpose the tenants in possession had claimed the property, and the plaintiffs acquiesced in their claim.

This was an action of ejectment in the circuit court of Norfolk county brought by Walter H. Doyle and his brothers and sisters, children of John Doyle, deceased, and Anne H. Bowden, against Charles H. Stonestreet and Edward J. Sourin, to recover the one undivided moiety of a lot of ground in the city of Norfolk. Both parties deduced their title from Walter Herron, who died in the city of Norfolk in April, 1838. He seems to have been a man of large wealth, and left a will with a number of codicils, for the most part written by himself, which were duly admitted to probate in April, 1838. The principal object of his bounty was his neice and adopted daughter Anne Plume Behan Herron, to whom he gave one half of the bulk of his estate, and his nephews James H. Behan and John Doyle, to whom he gave the other half. The legacies to other persons were numerous.

By one of the provisions of his will he gave the sum of $1,920 of corporation stock in trust to Robert E. Taylor, John N. Tazewell, William Selden, Jr., and William G. Cunningham, to the use and purpose of a free school, and further extending the education of poor children. This he revokes, and then says: That the above named persons, Taylor, Tazewell, Selden and Cunningham, as trustees "take charge of and appropriate to that use and purpose, and build thereon by subscription, or a grant from the literary fund of the State, or otherwise, in which I hope and believe the court and common council of the borough will liberally contribute, a large and commodious school-house or academy on that fine lot of land on Duke, Bute and Knight streets, which I give for that purpose, to be called

and denominated the 'Plume School.'" This is the lot in dispute.

By another clause of his will he directs his executors to sell his land on Elizabeth river near "Fort Norfolk," called the "Old Distillery," and that the proceeds be appropriated by the trustees aforesaid to the use and benefit of said free Plume school; but should the school-house or academy be not built or commenced in three years after my decease, with a fair prospect of completion, and the intention of the testator be carried through, then in failure of this object to a large and useful extent "I give and bequeath the said lot on Elizabeth river to my residuary legatee, to be disposed of by her and the proceeds appropriated at her judgment and discretion, for the use and benefit of the Catholic congregation of Norfolk, by enlarging the church, &c." He gave to his adopted daughter Anne Plume Behan Herron all the rest and residue of his estate, both real and personal, to her and her heirs, subject to the payment of the pecuniary legacies not otherwise provided for.

Anne P. B. Herron died in 1855, and by her will she gave the whole of her estate to her brother James H. Behan. And James H. Behan died in 1866, and the 30th clause of his will, which was dated in April, 1860, is as follows: " I give and bequeath to the Reverend C. H. Stonestreet, now of Washington, D. C., and to the Reverend Edward J. Sourin, now of Philadelphia, and whichever of them may live the longest, my land with improvements thereon on Bute, Duke and Freemason streets; also sixty shares of my stock in the Bank of the Republic, city of New York; these legatees are both of the religious order known as the 'Society of Jesus,' but the legacy is to them in their individual character and absolute property."

The plaintiffs having introduced the foregoing wills, and proved that they were heirs at law of Walter Herron, and that the defendants were in possession of the lot, the de-

fendants offered evidence to prove that after the death of Walter Herron, the trustees, Taylor, &c., never accepted the trust, or set up any claim to the lot; and that Anne P. B. Herron took possession of it, claiming it as residuary devisee of Walter Herron; that it was assessed for taxes in her name, and after her death in the name of James H. Behan; and after his death in the name of the defendants; that it was enclosed, and a tenant upon it, and that it had been under the control and management of these parties respectively. And they introduced in evidence a letter bearing date June 18th, 1878, from A. H. Bowden, one of plaintiffs, to the Reverend M. O'Keefe, who had been the agent of Behan in his lifetime, and was the agent of the defendants in the management of this property. This letter referred to a previous suit for this lot by the plaintiffs, in which they had suffered a nonsuit. In this letter Mrs. Bowden expressed her regret and surprise that the suit had been brought, and that she had been made a party to it. And she said that Miss Herron was entitled to it as residuary devisee of Walter Herron.

After the plaintiffs had introduced their evidence in chief and rested their case, and after the defendants had introduced all their evidence, the plaintiff offered in evidence two letters which the defendants had produced in court in obedience to a summons served on their counsel. One of these letters was from M. Fitzgibbon, one of the executors of James Behan, to the defendant Ed. J. Sourin, in which the writer informs him that the executors of Behan have a letter of Behan addressed to him and Father Stonestreet in relation to the legacy left to them; and on request from Sourin, he (Fitzgibbon) will send him a copy of it.

The letter from James H. Behan is directed to Reverend Edward J. Sourin, Society of Jesus. And he says: Whatever property will come into your hands and those of

Reverend Mr. Stonestreet, under my last will, I leave to you in trust for the benefit of our holy religion. And as I have long wished, as also my dear sister, to see an institution of our order established in this city, I request that you will found a college and church here on the lot and with the money which you will acquire from me. I have obtained the consent of Bishop McGill to this request.

The defendants objected to the introduction of these letters as evidence; but the court overruled the objection; and the defendants excepted. This is their first exception.

The plaintiffs then offered in evidence a letter of M. O'Keefe, dated Norfolk, October 26th, 1868, addressed to Mrs. Bowden, one of the plaintiffs. He speaks of having received her letter of June; says that her brother John's children are again on the war-path, and that they are using her name in their odious persecution of the Jesuit fathers. And he sent her a paper which he requested her to execute, that he might hereafter use it to show she was no party to this crusade against the church or religious orders. This paper protests against the use of her name in the pending suit, and pledges her, if the suit should result unfavorably to the Jesuit fathers, to renounce any claim that may be allowed her by any decision of said court.

Mrs. Bowden did not execute the paper; but replied to the letter; but O'Keefe stated in his evidence he did not have her letter, and believed he had destroyed it.

The defendants objected to the introduction of this letter of O'Keefe's; but the court overruled the objection, and admitted the evidence, and the defendants excepted. This is their second exception.

After all the evidence had been introduced the plaintiffs moved the court to give the following instruction:

The plaintiffs ask the court to instruct the jury, that the devise of Walter Herron in his will of the property in controversy to Robert G. Taylor, John N. Tazewell, William

Selden, Jr., and William G. Cunningham, as trustees, for the purpose therein designated, is void; and being void, the said property descended to the heirs at law of the said Walter Herron. And the court gave the instruction; and the defendants excepted. This is their third exception.

The defendants then asked for ten instructions to the jury, marked respectively with the letters A, B, C, D, E, F, G, H, I, J. The first three refer to the devise by Walter Herron, and present it in different aspects, in either of which the jury are to be instructed that the property passed to Anne P. B. Herron as residuary devisee of Walter Herron. The other instructions relate to the long continued possession of the lot by the defendants, and those under whom they claim. Of these D and E are as follows:

### D.

If the jury believe from the evidence in this case that Anne Herron originally took possession of the property in controversy, as heir-at-law of Walter Herron, deceased, although the presumption is that she took such possession as well for the other heirs as for herself; still, if the jury also believe that all her subsequent acts in regard to the said property amounted to a total denial of all the rights of said other heirs to any part of said property, and that said other heirs knew of said acts and acquiesced therein, that such acts amounted to a complete ouster of the said other heirs, and their rights to recover the land in controversy expired after the period embraced by the act of limitations.

### E.

If the jury believe from the evidence that as far back as the year 1845, the said Anne P. B. Herron was in possession of the land in the declaration mentioned under color of title thereto by the residuary clause of the will of Walter Herron, or as his residuary devisee, with the knowledge and acquiescence of the other heirs-at-law of the said

Walter Herron, no matter whether said claim was under a good or a bad title, and that she so possessed the said land continuously up to the time of her death, in 1855, that the said James H. Behan then took possession of said land under color of her last will and testament, or as heir-at-law of said Anne P. B. Herron, and so possessed the same continuously until his death in the year 1864, and that the defendants then took possession of the same by virtue of the devise contained in the last will and testament of the said James H. Behan, and have so possessed the said land continuously up to this time, that the said plaintiffs cannot recover the said land or any part thereof from the said defendants in this action.

The court refused to give any of the instructions asked for by the defendants; and instructed the jury as follows:

1.

The court instructs the jury that if the plaintiffs can recover in this action at all they must recover upon the strength of their own title, and not upon the weakness, either real or supposed, of their adversaries, the defendants in this cause. And where defendants's title (though originally defective) held adversely against plaintiffs, under color of title so defective, has ripened into a good and valid title by reason of the statute of limitations, the plaintiffs cannot rocover in this action.

2.

If the jury believe from the evidence that the defendants and those under whom they claim have been in actual, exclusive, and uninterrupted adverse possession of the lot of land in the pleadings mentioned for a number of years embraced within the period of the statute of limitations, honestly and exclusively held and claimed by them under a color of title, they must find for the defendants, even though they should believe that the title under which the

defendants claimed and held such possession was defective in law.

### 3.

The court further instructs the jury, that every co-parcener, joint tenant, or tenant in common, occupies a position of trust and confidence towards his co-tenants, and he who seeks to change these relations and to expel others from the enjoyment of the common property, must establish the facts which will give him the benefit of an adverse possession as to them ; that the possession of one joint tenant, tenant in common, or co-parcener, is *prima facie* the possession of all the other co-tenants, and that the mere possession of the one will not be taken to be adverse to the title and possession of another.   Yet, if the defendants prove actual ouster or other notorious act or acts amounting to a total denial of the plaintiffs' rights as co-tenants, and of such a character as to afford direct or presumptive proof that the other co-tenants or plaintiffs had had knowledge of the claim of exclusive ownership thus set up and held by defendants or those under whom they claim, such possession of the lot in the pleadings held continuously and uninterruptedly under such circumstances, under color of title, for the length of time prescribed by law, would constitute adverse possession and would ripen into a good and sufficient title in defendants.

And to the refusal of the court to give the instructions, or any of them, asked for, and to the giving the other instructions, the defendants excepted.   This is their fourth exception.

The jury found a verdict in favor of the plaintiffs for the one undivided half of the lot as claimed by them, assigning to each plaintiff his or her share thereof, and the court rendered a judgment in accordance with the verdict.

After the verdict the defendants asked for a new trial on

the grounds of misdirection of the jury by the court in the instructions given and refused; of the introduction of improper evidence, and because the verdict was contrary to the evidence. But the court overruled the motion, and the defendants excepted. In this exception all the evidence is set out. And upon their application to a judge of this court, a writ of error and *supersedeas* was awarded to the defendants.

*White & Garnett* and *Ellis & Thom*, for the appellants.

*J. Devereux Doyle*, for the appellees.

STAPLES, J., delivered the opinion of the court.

The subject of this controversy is a valuable lot in the city of Norfolk. By the will of Walter Herron, admitted to probate in 1838, it was devised to Col. Robert E. Taylor, John N. Tazewell, William Seldon, Jr., and William E. Cunningham, as trustees, to take charge of and build thereon a large and commodious academy, for the purpose of establishing a free school and extending the education of poor children.

The first question presented for our determination is whether this devise is void, on account of its uncertainty as to the beneficiaries who are to take. That it is void seems to be very clear under the decisions of this court in *Gallego's Ex'or* v. *Attorney-General*, 3 Leigh, 450; *Kelley* v. *Love's Adm'rs and als.*, 20 Gratt. 124; unless, indeed, it can be brought within the influence of the principles laid down in *Literary Fund* v. *Dawson*, 10 Leigh, 147; *Kinnaird et als.* v. *Miller's Ex'or*, 25 Gratt. 107; and *Inglis* v. *Sailors' Snug Harbor*, 3 Peters' R. 99.

In these latter cases it was held, that whilst a devise *in præsenti* to take effect immediately on the death of the testa-

tor, is void where the beneficiaries are numerous and un-certain; it is otherwise if the devise be executory in its nature, to take effect upon condition that an act of incor-poration be obtained within a reasonable time: that is to say, a life or lives in being, and twenty-one years there-after.

In the Snug Harbor case the devise was for the support of aged and worn-out sailors, and the testator declared if the purpose he had in view could not be accomplished without an act of the legislature, he desired that such an act should be obtained as early as practicable, incorporating the trustees named by him; which was accordingly done within a few years after his death.

In *Literary Fund* v. *Dawson*, 10 Leigh, 450, the testator placed the whole subject of his devise under the control of the legislature; and he expressed the confident belief that an act might be obtained giving effect to his wishes. This court held that these provisions of the will were equiva-lent to a devise to the executors in trust for the purpose of procuring the passage of a necessary law on the subject; and if this should be done within a reasonable time, no dif-ficulty could arise in carrying out the wishes of the tes-tator.

In all these cases the devise is to be regarded as having been made to a corporation to be created by act of the legislature; and when so created, the corporation takes the estate and executes the trust according to the plain inten-tion of the devisor.

It is insisted that these principles apply to the present case; that this is an executory devise, having in view an act of incorporation to be obtained by the trustees named by the testator, if the same shall become necessary.

A careful examination of the will fails to show that the testator entertained any doubts of the validity of his devise to the trustees, or even supposed that any law was neces-sary to give effect to his bounty.

If, indeed, he contemplated any legislation on the subject at all, it was not to make valid his devise, but to authorize the grant from the literary fund. His direction was that the trustees should take charge of the lot and appropriate it to the use of a free school, and build thereon an academy, by subscription, or a grant from the literary fund, or otherwise.

The trustees were gentlemen of high character, and marked influence in the community, in whom the testator had implicit confidence. He left to them the choice of the means necessary to secure the funds for the erection of the building; merely suggesting for their consideration that the money might be raised by private subscription, or by a grant from the literary fund, or in some other mode.

He also suggested that the trustees of the Norfolk academy might be induced to unite the proceeds of a lot they were about to sell with the means he had provided, and he expressed the hope and belief that the council and borough of Norfolk would liberally contribute to the enterprise.

Whatever doubts the testator may have had with respect to the mode of raising the necessary funds for the building, it is apparent he entertained none as to the validity of his devise.

It was not intended to be an executory devise to a corporation, not in *esse* to be thereafter created, but a devise *in præsenti*, to four trustees named, to take charge of and hold the lot in controversy immediately upon his death. The case is, therefore, directly within the influence of the rule laid down by the supreme court of the United States in *Baptist Association* v. *Hart*, 4 Wheat. R. 4, in which it was held, that the devise was *in præsenti* to take effect upon the death of the testator; and as the association was not incorporated, and as there was no executory bequest over to the association if it should thereafter obtain an act of incorporation, the devise was void for uncertainty.

What would have been the effect upon the rights of the parties in the present case had the trustees obtained the passage of a law legalizing the devise, we need not decide. No such law was ever passed, or ever applied for, so far as we are advised. The trustees never took possession of the lot in question, and made no attempt to execute the trusts of the will. More than forty years have passed away, and the property remains unimproved and almost valueless to any one. Is it to remain in perpetuity awaiting some possible act of the legislature at some remote period? Who is to apply for an act of incorporation, if such a thing were now possible? Not the trustees; they have uniformly refused to take any action in the matter. It is scarcely to be supposed the defendants will do so. They claim to be the owners of the lot under the will of Mr. Behan, and that claim is based upon the idea that the devise in the will of of Walter Herron is void for uncertainty.

The next question to be considered is, whether the estate passed to the heirs at law, or to Miss Anne Herron, the residuary devisee, under whom the defendants claim.

The cases are generally agreed that a distinction exists between a residuary bequest of personal estate, and a residuary devise of real estate.

A will of personal estate refers to the state of the property at the testator's death; and therefore it is that a general residuary bequest of personalty comprehends every thing which at the testator's death is not legally and effectually, as well as in express terms, disposed of. The rule is, however, very different with respect to a residuary devisee of realty. As to him the rule is (until changed by the statute of 1849 and '50) the will speaks only at the time of making it, and he can take nothing but that which was intended for him. *Jones* v. *Mitchell*, 1 Sim. and Stu. 290.

When, therefore, a specific devise of real estate is made, but which is void or ineffectual on account of the inca-

pacity of the devisee to take, the estate is not included in the residuary devise, but passes to the heirs as a case of intestacy, and for the very obvious reason that the testator conceives himself to have disposed of the property, and therefore does not intend the residuary devisee shall take it.

The specific devise, although inoperative for legal causes, as plainly indicates an intention to exclude the residuary devisee, as though the same estate had been given to some other person, who was at the time capable of taking, but by subsequent events was rendered incapable.

The heir in such cases takes the estate, not on the ground of any supposed intention of the testator in his behalf, but because he is entitled to any part of it which is not effectually and legally given to some other person.

On this subject we refer to a very able opinion of Chancellor Walworth in *Vancleek* v. *The Reformed Dutch Church*, 6 Paige R. 600. See also *Kennon* v. *McRoberts*, 1 Wash. 96; 1 Jarman on Wills, chap. 18, p. 529; *et sequitur* ch. 19, p. 446.

The learned counsel for the defendants maintain, however, that if the specific devise comprehends only a partial or contingent estate in lands, leaving an ulterior or alternative interest undisposed of by the testator, such interest passes by the residuary clause, and does not descend to the heir. And the same result follows in cases of executory devises in fee, for the estate being given to a person on the happening of a certain event, the alternative fee depending on the failure of that event, is undisposed of, and is such an interest as will be included in a residuary clause.

The argument founded on this rule as applied in this case is, that the devise is an executory devise to take effect when the necessary funds were raised by other persons to construct the building; that the testator would never have intended the devise as absolute and unconditional when the success of the scheme depended upon the efforts of the trustees to raise these funds. The devise must, therefore,

be regarded as being conditional; and as this condition was never performed, the alternative fee passed to the residuary devisee.

The answer to this view was to some extent anticipated in considering the operation and effect of the devise itself.

It is impossible to read the will in this case without a conviction amounting to almost a certainty, that the testator did not intend, or even expect that his niece Miss Anne Herron should, in any contingency, take this property under the residuary clause of his will.

He had given her a very ample estate worth, according to one of the witnesses, $200,000. He had no doubt of the success of his scheme for the establishment of the school. It is very true he did have some expectation or apprehension that the building might not be completed or commenced within three years; and in that event he devised to another purpose the land on Elizabeth river.

But, although the building might not be commenced within the time specified, the school was not to be abandoned. So confident was he of its success he made no other disposition of the property in controversy, or of the ground rent of $250 *per annum* which he had perpetually dedicated to the school. Whenever the testator contemplated the absolute or partial failure of any of his specific devises or bequests, he seems to have made other provisions for the disposition of the property.

We are, therefore, of opinion the devise to the trustees was absolute and unconditional, and as far as the testator could make it, a complete disposition of the entire estate in the property; and inasmuch as it was void for uncertainty in the beneficiaries, the property descended to the heirs at law, the plaintiffs being entitled to one moiety and the defendants to the other.

VOL. LXXV—47.

### INSTRUCTIONS.

Having disposed of the question of title, we come next to the instructions. The plaintiff asked for one instruction, which was given by the court. The defendants asked for ten instructions, which were refused, and in lieu thereof three others were given by the court of its own motion.

The first three instructions asked for by the defendants are the converse of the proposition laid down in the plaintiffs' instruction. They relate to the validity of the devise, and to the operation and effect of the residuary clauses of the will, which have already been passed upon in a former part of this opinion.

The remaining seven instructions assert in different forms substantially the same propositions of law, with reference to the supposed adversary possession relied upon by the defendants.

The objection to nearly all of them is that they seek to apply to tenants in common and others claiming in privity, the same rules for determining the question of adversary possession that apply to parties claiming under separate and distinct titles.

As will be hereafter seen, as between parties holding fiduciary relations to each other, something more is necessary than a mere adverse holding and disclaimer.

Although instruction D is not liable to this criticism, it is objectionable on other grounds; for it assumes that the jury are authorized to infer that Miss Herron having originally taken possession of the property as heir at law of Walter Herron, her subsequent acts amounting to a denial of the rights of the other heirs, known and acquiesced in by them, constituted a complete ouster of the others, and their right to recover is barred, after the period embraced by the act of limitation. The effect of this instruction was to ignore one important element of adversary possession—

Stonestreet and al. v. Doyle and als.

a continued and uninterrupted holding for the period of the statutory bar, and to affirm that possession being once taken, mere acts of disclaimer afterwards are sufficient.

The rule is well settled that if the continuity of possession is once broken, before the expiration of the statutory period, by abandonment or otherwise, the seisin of the true owner is restored. See Angel on Limitation, § 413. A continuous adversary possession for the requisite period is universally regarded as, perhaps, the most material element in conferring title. This element, as already stated, is completely ignored in the instruction under consideration.

If, however, the instruction is to be considered as conceding that Miss Herron must have held a continuous possession, then it is objectionable on another ground, it assuming that such possession so held by her during her life was sufficient to confer title, although it may have fallen short of the period of the statutory bar. It is very probable that counsel did not intend to assert any such proposition. But the construction is susceptible of that interpretation, and was therefore calculated to mislead.

It is, however, obviously impossible, within the limits of an ordinary opinion, and, indeed, it is unnecessary in this case, to enter into a specific examination of the defendants' numerous instructions. It may be that some of them might have been given. Conceding that this is so, and conceding further, that where a proper instruction is asked it is the duty of the court to give it as asked for, still, where proper instructions are given, covering substantially the whole law of the case, arising upon the proofs and pleadings, an appellate court will not reverse for the failure to give that which has been asked for by the losing party.

The three instructions given by the court as a substitute for those of the defendants', define, in plain and concise terms, the rules of law governing in cases between tenants in common, where an adversary possession is relied

upon as a defence. These instructions require, in this connection, but a single comment. They declare that the possession must be under the color of title. Upon this doctrine of the necessity of the color of title, in cases of this kind, there is a great conflict of authority. It has not been settled in this State whether a possession under a mere claim of title, as distinguished from mere *color* of title, is sufficient under the statute. It is not necessary to pass upon that question here; for it was conceded throughout that the defendants, and those under whom they claim, have held possession under color of title.

The defendants, therefore, could not have been prejudiced by the terms used, if it should be conceded that the proposition of law as laid down by the court below in this particular is erroneous.

We come now to the consideration of the first and second bills of exception taken by the defendants. They have been reserved for the last because the questions presented could be better understood after disposing of the other matters arising upon the record. It appears from the first bill of exceptions that after the plaintiffs had concluded their evidence in chief, and the defendants had concluded their evidence, the plaintiffs, further to maintain the issue on their part, read to the jury two letters, one purporting to have been written by one Maurice Fitzgibbon, and the other by James H. Behan, addressed to the Rev. E. J. Sourin, one of the defendants.

When these letters were written does not appear. That of Mr. Behan probably after his will was made, and a short time previous to his death. It will be remembered that Mr. Behan devised the property in controversy to the defendants absolutely and in their own right. The object of the letter was to inform them that the devise was in fact for the use and benefit of the order of Jesuits, and they were requested to hold the property in trust for a Jesuit college and church.

Mr. Fitzgibbon, one of the executors of Mr. Behan, having this letter in his possession, wrote to one of the defendants informing him of the fact, and probably afterwards furnished him with the original. The plaintiffs, learning that these letters were in the possession of the defendants, gave notice to produce them on the trial; they were accordingly produced and read to the jury against the objections of the defendants. So far as the letter of Fitzgibbon is concerned, it may be thrown out of the case. It was merely introductory to that of Mr. Behan, and explains the circumstances attending the production of the letter and the views of the writer. If the letter of Mr. Behan be admitted, the letter of Fitzgibbon is immaterial, and the court would not reverse because it was allowed to go before the jury. The main point for decision, then, relates to the admissibility of Mr. Behan's letter.

In order to determine that point satisfactorily, it will be necessary to advert to another part ot the evidence. It appears that the defendants read in evidence without objection from the plaintiffs, a letter written by Mrs. Bowden, one of the plaintiffs, to Rev. Mr. O'Keefe, a Catholic priest, and an agent of the defendants. This letter was written June the 18th, 1878, very shortly after the plaintiffs' first action for the recovery of the lot in controversy had terminated in a non-suit. In this letter Mrs. Bowden expressed her surprise and regret that her name had ever been used in that action. She declared that it was a useless proceeding, as Miss Anne Herron was entitled to the property as residuary legatee; that Miss Herron and James Behan understood one another, and that she (the writer) had never regretted, coveted, or thought wrong a gift by her for so holy and charitable a purpose, and which will perpetuate their names to the end of time!

What was the precise object of defendants in introducing this letter does not appear. Certainly not to show a

disclaimer of title, as there cannot be a parol disclaimer of a freehold. If Mrs. Bowden was mistaken in supposing Miss Anne Herron was entitled to the property under the residuary clause of the will, as it appears now that she was, she was not estopped by such mistake to assert her title. It is probable the letter was introduced as proof that Mrs. Bowden, knowing the claim and possession of the defendants, had acquiesced therein; and thus the possession of the defendants was brought within the rule applicable to tenants in common.

This letter of Mrs. Bowden's was answered by the Rev. Mr. O'Keefe on the 25th October, 1878, after the present action was commenced. The writer, after stating that some of the plaintiffs were using Mrs. Bowden's name in their odious persecution of the Jesuit fathers, declared he rejoiced exceedingly to find Mrs. Bowden possessed of the true Catholic spirit, which forbade her to appropriate what had been donated for the glory of God and the interest of religion.

He then enclosed the form of a protest, to be signed by her against the use of her name as plaintiff in the suit, and pledging herself, if the suit should result unfavorably to the Jesuit fathers, to renounce in their behalf, and transfer to them all her interest in and title to the property. Mrs. Bowden, it seems, declined to sign this protest, and wrote to Mr. O'Keefe in reply. That answer was called for in the court below, but the witness stated that he was morally certain he had destroyed it. The letter of Mr. O'Keefe was read to the jury by the plaintiffs after the defendants had produced and read Mrs. Bowden's letter.

Now, it is true that Mr. O'Keefe is not a party to the suit, nor interested in the property; but he was the acting agent of the defendants, and if they chose to avail themselves of the contents of a letter written not to them, but to their agent, they could not fairly and justly object to the answer

of the agent in reply. The answer was admissible to the same extent it would have been if written by the defendants themselves.

Had the witness produced the answer of Mrs. Bowden, the plaintiffs would have had the right to bring before the jury the entire correspondence. As that answer has been destroyed, it was competent for them to show so much of it as in fact existed. The rule is well settled that when letters are laid before a jury the parties affected by them have a right to the entire correspondence, that the true meaning and extent of what is written may be fully understood. 1 Phillips on Evidence, page 417, margin; 342, top page.

In the same connection the plaintiffs introduced the letter of Mr. Behan, already adverted to, in which he declared that whilst the property was given by his will to the Rev. Mr. Stonestreet and the Rev. Mr. Sourin, as individuals, it was in trust for the benefit of "our holy religion." Mr. Behan well knew that a devise by will for religious purposes was illegal, and contrary to the spirit of our laws. He sought, therefore, to accomplish his object by a secret trust, resting upon the good faith of his devisees. If, as the defendants complain, the effect of these letters was to excite against them the prejudices of a Protestant jury, the result was due to their own action. The fact that the defendants claimed the property for the benefit of the order of Jesuits was intimated in the letter of Mrs. Bowden, and unreservedly announced in the answer of the Rev. Mr. O'Keefe.

Although the letter of Mr. Behan was no part of that correspondence, it contained nothing new, nothing that had not already appeared in the correspondence, which was brought before the court by the action of the defendants. If it, therefore, be conceded that letter was irrelevent, this court would not reverse the judgment on account of its admission, as the defendants could not have been prejudiced by it.

But it is not necessary to rest the decision on this ground. The letters were proper evidence to go to the jury upon the question of adversary possession. In the first place it is to be borne in mind, that in this suit the defendants claim title to the property in their own right, and they rely upon an ouster and adversary possession on their own part, and acquiescence on the part of their co-tenants. It becomes important, then, to ascertain what was the character of the claim asserted by them, and the adversary possession so held against their co-tenants; and the circumstances under which the acquiescence was obtained. These letters show, or tend to show, that the possession thus held by the defendants was in trust for the benefit of the Catholic church, and especially the order of Jesuits; and it was in that claim that Mrs. Bowden acquiesced, and to that title she assented. To her, the defendants did not claim the property as belonging to them, but as sacredly consecrated to the holy order of which they were members. And the question arises whether they are now to be permitted, after the trust has failed, and after the lapse of many years it is no nearer of accomplishment than in the beginning, to rely upon a possession thus held as enuring to their individual benefit. Mrs. Bowden might well say "the claim which I acknowledged, the ouster in which I acquiesced was for the cause of religion, for the benefit of the Catholic church, and it was with the understanding the property was to be devoted to pious uses. I insist that you shall not be permitted to rely upon a silence thus enforced, and a possession thus obtained, for your individual benefit and protection, to my prejudice as your co-tenant, whose interest you were bound to protect.

Appeals to convictions of religious duty are ever recognized as the most powerful that can animate the human breast. Under their influence concessions will be made and rights surrendered that could never be yielded

to any individual claim or demand. Let us suppose these defendants are successful upon this claim of ouster and adversary possession, what will be the status of the property hereafter? Will they and their successors hold it in trust for the benefit of the church, as designed by Mr. Behan? If so, he will have established by a secret trust that which cannot be done by devise, and is in direct violation of the policy of the Virginia laws.

The counsel for the defendants will say the church has nothing to do with the property; it belongs to the defendants and their representatives exclusively. If this be so, is it not apparent that the defendants are using for their present gain and advantage a possession and an acquiescence which was conceded to them only as representatives of the church?—a position utterly incompatible with their obligations and duties as tenants in common. It may be said, however, that the letters concern Mrs. Bowden only. That they could not have influenced Doyle's heirs, who are also plaintiffs in this suit. Mrs. Bowden certainly has the right to any benefit to be derived from the evidence; and whatever tends to her benefit enures also to the benefit of her co-tenants; and whatever prevents the operation of the statute of limitation as to her, operates for the protection of the others. Angell on Limitation, 434–5.

I think, therefore, these letters were properly received in evidence, not for the purpose of affecting the will of Mr. Behan, or the title acquired by the defendants thereunder; but for the purpose of throwing light upon and explaining the character of the possession held by them. Acts of ownership by one tenant are not necessarily acts of hostility. The difference between them and other persons is, that acts which if done by a stranger would amount to a disseisin, in the case of tenants in common are susceptible of explanation by parol proof, consistent with the real title.

The circumstances under which the possession was taken and the property was held, as well as the character of the acquiesence by the co-tenants, are proofs to be considered by the jury. This necessarily results from the fiduciary relations of the parties.

Before concluding this part of the case, it is proper to notice the objection made by the defendants, that no proof was adduced of the authenticity of the letters. With respect to the letters of Mrs. Bowden and Rev. Mr. O'Keefe, there can be no question. The first was read by the defendants, and the latter was proved by the writer, who was examined as a witness. The letters of Mr. Behan and Fitzgibbon were produced by the defendants themselves, upon notice by the plaintiffs, and no question was raised as to their authenticity by either party.

It only remains to inquire whether the circuit court erred in overruling the motion for a new trial based upon the ground that the verdict was contrary to the evidence. It is insisted that the ouster and adversary possession of the defendants for a period sufficient to constitute the statutory bar was fully established. In considering a motion for a new trial where, as in this case, the evidence alone is certified, this court can only look to that of the prevailing party, and if that is sufficient to sustain the finding of the jury, this court, according to well established principles, cannot interfere with the verdict. This view, of itself, would be conclusive of our own action here. But if we look at all the testimony on both sides the result would not be changed. As between tenants in common, and others claiming in privity, the entry and possession of one are ordinarily deemed the entry and possession of all; and this presumption will prevail in favor of all until some notorious act of ouster or adversary possession is brought home to the knowledge of the others. Until there is notice, actual or constructive, that the possession is hostile, it will

be deemed to have been amicable, notwithstanding the tenant's possession may have been wholly adversary. *Caperton* v. *Gregory*, 11 Gratt. 506. As was said by the supreme court of the United States in *Zeller's Lessee* v. *Eckert and als.*, 4 How. U. S. R. 289, 296, a clear, positive, continued disclaimer of title and the assertion of an adverse right to be brought home to the knowledge of the other tenants are indispensible. And although a great lapse of time, with other circumstances, may warrant the presumption of a disseisin or ouster by one joint tenant or tenant in common, this presumption is a matter for the consideration of the jury, and not a question of law for the court. *Purcell and Wife* v. *Wilson*, 4 Gratt. 16. In this case the jury have found there is no such adversary holding, as amounts to an ouster, and dissesin of the co-tenants, for the period required by the statute. The testimony of the defendants tends to show that Miss Herron and Mr. Behan successively held possession of the property in controversy, claiming title ; but it does not show that this adversary holding and disclaimer was brought to the knowledge of the plaintiffs, or that it was of that open, notorious and uninterrupted character which might be regarded as equivalent to notice. We will not say the jury might not, if they believed the defendants' testimony, have inferred every fact necessary to constitute the ouster and disseisin of the plaintiffs. It is sufficient to say they have not done so. For these reasons we are of opinion the judgment should be affirmed.

We arrive at this conclusion with the greater satisfaction because it is in accord with the justice of the case.

JUDGMENT AFFIRMED.