𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

DUGGINS AND OTHERS V. WOODSON AND OTHERS.

March 11, 1915.

1. PARTITION—*Case at Bar—Allotment to Life Tenant—Interest Ac-quired.*—The four heirs of F. and the tenant by the curtesy of another share in his estate entered into an agreement for the voluntary partition of the land whereof F. died seized and possessed by certain designated commissioners who were to divide the same into five equal parts. The agreement gave the heirs the preference in the selection of the lots, after the division, and declared that W. (the tenant by the curtesy) "shall have the remaining lot." After the death of W. his heirs claimed that, under the agreement, he took a fee in the lot assigned to him. No deed was made to any of the parties.
   *Held:* The whole scope and object of the agreement was to bring about a partition of the land among the heirs of F., and that when the allotment was made to W. he took exactly the same interest in the lot that he had before it was set apart for his use and enjoyment, namely, a life estate.

2. ADVERSE POSSESSION—*Possession of Life Tenant.*—The possession of a life tenant, as such, cannot be adverse to the remainder-man or reversioner, because the right of action of the latter does not accrue until the death of the tenant for life.

3. ADVERSE POSSESSION—*Privity of Parties—Limitation of Action—When Statute Begins to Run.*—Where possession is originally taken and held in subserviency to, or in privity with, the title of the adverse claimant, the statute of limitations does not begin to run until the possession, before consistent with the title of the adverse claimant, becomes tortious and wrongful by the disloyal acts of the party in possession, which must be so open, notorious and continued as will fully and clearly show such change on the part of the adverse claimant.

Error to a judgment of the Circuit Court of Goochland county in an action of ejectment. Judgment for the defendant. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*Smith & Smith* and *A. G. Collins,* for the plaintiffs in error.

*W. D. Cardwell,* for the defendants in error.

HARRISON, J., delivered the opinion of the court.

It appeared upon the trial of this action of ejectment that John W. Ford died seized and possessed of a tract of land in Goochland county containing 346 acres, and left surviving him certain heirs at law. It further appears that M. R. Woodson married two of the daughters of John W. Ford, the first of whom died without issue and the second died leaving a child that survived its mother but a few months. The birth of this child entitled M. R. Woodson to a life estate in the undivided interest of the child's mother in the tract of land left by her father. Thus matters stood when the heirs at law of John W. Ford, deceased, entered into the following agreement:

"We, the undersigned, children and heirs at law of John W. Ford (deceased) and all being of lawful age, do hereby constitute and appoint Dr. Robert G. Parrish, J. V. Bowles, Henry John H. Johnson, Wm. R. Johnson and Benj. B. Pleasants to act as commissioners to divide the real estate of which the said John W. Ford died seized and possessed, lying in Goochland county, containing by survey 346 acres, into five equal parts having regard to quality as well as quantity; and shall give unto Mrs. Ann E. Carden her choice of the said lots; and that John T. Ford shall have the second choice of the said lots and that Granville Duggins and S. E. Duggins shall have the third choice of the said lots and that John Folstead and Pattie R., his wife, shall have the fourth choice in the said lots, and that M. R.

Woodson shall have the remaining lot. And we bind our-
selves individually and collectively to stand to and abide
by the said division, as if made by commissioners appointed
by the County Court of Goochland county.

"Given under our hands and seals this 20th day of No-
vember, 1883.

|  |  |
|---|---|
| ANN E. CARDEN, | (Seal) |
| JOHN T. FORD, by J. V. BOWLES, | (Seal) |
| G. T. DUGGINS, | (Seal) |
| S. E. DUGGINS, | (Seal) |
| J. A. FOLSTEAD, | (Seal) |
| PATTIE R. FOLSTEAD, | (Seal) |
| M. R. WOODSON, | (Seal)." |

The division of the land contemplated by this agree-
ment was made November 22, 1883, by the commissioners
named therein, one of the lots containing 109¼ acres being
assigned to M. R. Woodson.

The plaintiffs in this ejectment suit are the heirs at law
of John W. Ford, who died seized of the land in contro-
versy. The defendants are the heirs at law of M. R. Wood-
son, by a third marriage, and have no interest in the land
in question as heirs of John W. Ford, deceased. The record
shows that at the time of the partition in November, 1883,
the tract of 109¼ acres which was assigned to M. R. Wood-
son, in right of his deceased wife, was unimproved, uncul-
tivated and unfenced, and that until his death in 1896
it was rented by him to the husband of one of the heirs
of John W. Ford, in consideration of the payment by the
tenant of the taxes accruing thereon.

It is manifest that this case proceeded in the lower court
upon the theory entertained by the defendants and adopted
by the court, that their father, M. R. Woodson took, under
the partition agreement mentioned, a fee simple interest
in the 109¼ acres of land which was allotted to him by the

commissioners named in such agreement. To give this paper the construction here contended for would be to extend its operation and effect far beyond any just rule of interpretation. The whole scope and object of the agreement was to bring about a partition of the land of John W. Ford among his heirs, and this was its only legal effect. No deeds were made between the parties. The only interest that M. R. Woodson had in the land of John W. Ford, at the time the agreement in question was made, was in right of his wife. He had a life estate, as tenant by the curtesy, in his deceased wife's undivided share of the land inherited by herself and others from their father. This share was ascertained, by the proceeding employed to make the partition, to be 109¼ acres, and when it was allotted to M. R. Woodson he had exactly the same interest in it that he had before it was set apart for his use and enjoyment, namely, a life estate. The heirs owed him nothing, and it is not pretended that he had any claim against them except such as he claimed in right of his wife, and it would be unreasonable to suppose that they intended to grant him something that did not belong to him. *Bolling* v. *Teel*, 76 Va. 487; *Yancey* v. *Radford*, 86 Va. 638, 10 S. E. 972.

In the light of what has been said and the authorities cited, it is clear that the circuit court erred in refusing to instruct the jury, at the request of the plaintiffs, that, under the agreement of November 20, 1883, and the partition made in pursuance thereof, M. R. Woodson took only a life estate in the 109¼ acres of land in controversy; and that the defendants derived no title thereto under or by virtue of the interest taken by their father under such agreement. And further the court erred in giving for the defendants, over the protest of the plaintiffs, an instruction telling the jury that the agreement purported on its face to grant to M. R. Woodson a fee simple title to the 109¼ acres of land, and that the burden of proof was

on the plaintiffs to show that a less estate was intended to be conveyed.

It was suggested in the oral argument before this court that M. R. Woodson had inherited the land in controversy from his child, who had inherited the same from its grandfather, the mother having died before her father. It is sufficient to say that there is not a word of evidence in the record tending to sustain this claim. On the contrary, the record completely negatives any such pretension. If there was foundation for the contention, the burden rested upon the defendants to establish the fact, and yet they have not introduced a word of evidence upon this or any other question in the case.

It is further contended by the defendants that they and those under whom they claim have acquired title to the land in controversy by adverse possession for the statutory period.

It is clear from the facts already adverted to that M. R. Woodson, who lived until 1896, did not and could not hold adversely to the heirs of John W. Ford, who were the remaindermen at the expiration of his life estate, which we have seen was the only estate he had in the land. The possession of a tenant for life, as such, cannot be adverse to the remainderman or reversioner, because the right of action of the remainderman or reversioner does not accrue until the death of the tenant for life. It has been so held as to life tenants in right of dower and by the curtesy. 1 Ruling Case Law, p. 743; *Hannon* v. *Hounihan*, 85 Va. 429, 12 S. E. 157.

It follows from what has been said that the circuit court erred in refusing to instruct the jury, at the request of the plaintiffs, that the defendants could not tack their holding of the land in question on to the holding of M. R. Woodson or his tenants, in order to make out an adverse holding for the statutory period.

As to the character of proof necessary to sustain a claim of adverse possession in a case like this, the law is clearly stated by Judge Buchanan in *Hulvey* v. *Hulvey,* 92 Va. 186, 23 S. E. 234, as follows:

"In questions of adverse possession a higher degree of proof is required in those cases in which the possession was begun in privity with the opposing claimant than in cases where no such relation existed. Where possession is originally taken and held in subserviency to, or in privity with, the title of the adverse claimant, a clear, positive and continued disclaimer and disavowal of the title and an assertion of an adverse right brought home to the adverse claimant, are indispensable before any foundation can be laid for the operation of the statute of limitations. If this were not so, the greatest injustice might be done. Without such knowledge, the adverse claimant has the right to rely upon the fiduciary relations under which the possession was originally taken and held.

"In such cases the statute of limitations does not begin to run until the possession, before consistent with the title of the adverse claimant, becomes tortious and wrongful by the disloyal acts of the party in possession, which must be so open, notorious, and continued as will fully and clearly show such change on the part of the adverse claimant. 2 Minor's Inst. (4th ed.) ; *Zeller's Lessee* v. *Eckert,* 4 How. 289 [11 L. Ed. 979]; *Stonestreet* v. *Doyle,* 75 Va. 356 [40 Am. Rep. 731] ; *Pillow* v. *Southwest Virginia Imp. Co.,* 92 Va. 144 [23 S. E. 32, 53 Am. St. Rep. 804] ; Newell on Ejectment, page 767.

"The record shows that the widow and her son, John Hulvey, have been in exclusive possession of the land since the death of John Hulvey, Sr., taking the issues and profits, which were insufficient to support the widow, paying the taxes, keeping up the fences and getting timber for the fencing and for fire-wood therefrom. These acts are not

sufficient in themselves to show that their holding was adverse. *Lagorio* v. *Dozier*, 91 Va. 492 [22 S. E. 239]; 1 Washburn on Real Prop., 566-7 (3d ed.)."

These observations apply with much force to the facts of the case before us, where the possession was originally taken and held by M. R. Woodson in privity with the title of the adverse claimants.

As this case must, for the errors already pointed out, go back for another trial, we deem it unnecessary to deal further with the instructions, some of which are admitted to be erroneous, and others are wholly inapplicable to the facts shown in the present record. Nor would it be proper to comment upon the evidence relied on as showing adversary possession in the defendants.

The judgment complained of must be reversed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with the views herein expressed.

*Reversed.*