Present:  All the Justices

SHANNON HARKLEROAD, ET AL.

                                                    OPINION BY
v.  Record No. 092299       JUSTICE LAWRENCE L. KOONTZ, JR.
                                              January 13, 2011
THEODORE K. LINKOUS, ET AL.

           FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                       Larry B. Kirksey, Judge

     In this appeal, we consider whether the circuit court

correctly determined that a co-tenant with an undivided one-

half interest in an improved parcel of real property had

established the necessary elements to prove adverse possession

as against the other co-tenants and, thus, was entitled to a

judgment granting quiet title to the entire property in fee

simple.

                              BACKGROUND

     The parties do not dispute the relevant facts which

reflect the chain of title to the property involved in this

case.  That property, located within the City of Bristol,

consists of three lots with a dwelling now collectively known

as 1101 Vermont Avenue.  These facts were set out in cross-

complaints filed by the parties in the Circuit Court of the

City of Bristol.

     In 1952, Pauline J. Smith and her husband, David H.

Smith, by deed each acquired an undivided one-half interest in

the property.  In 1976, David Smith by his will conveyed his

undivided one-half interest in the property to Louise Hensley, his daughter, and Kathy Talley Poore, his granddaughter, subject to a life estate in favor of Pauline Smith. In 1990, Louise Hensley died leaving her interest in the property to her children, Shannon Harkleroad and David Rhea. In 2004 upon the death of David Rhea, his interest in the property passed to his widow, Connie Rhea. As a result of these conveyances, Kathy Poore claims a 25% ownership interest in the property, Shannon Harkleroad claims a 12.5% ownership interest in the property, and Connie Rhea claims a 12.5% ownership interest in the property. For clarity, we will hereafter refer to these parties as the "Appellants" with the understanding that they collectively claim an undivided one-half interest in the property.

Pauline Smith occupied the dwelling on the property until 1982, when by deed she conveyed her undivided one-half interest in the property to D.H. Frackelton. The deed is silent as to her life estate interest but purports to convey the property to Frackelton "in fee simple forever." Thereafter, apparently Frackelton did not pay certain income taxes. In 1990 to satisfy its lien for these delinquent income taxes, the Internal Revenue Service ("IRS") sold Frackelton's interest in the property at a public sale to Theodore K. Linkous and his wife, Mary H. Linkous. By deed

dated March 21, 1991, the IRS conveyed "all right, title, and interest" of Frackelton to David and Mary Linkous (hereafter collectively "the Linkouses"). The Linkouses then took possession of the property, made renovations to the dwelling, and rented the dwelling until sometime in 2007 when their ownership interest was questioned by prospective purchasers of the property.

On November 25, 2008, the Linkouses filed an amended complaint in the circuit court against Appellants to quiet title to the property, asserting fee simple ownership on the grounds of adverse possession for the statutory period of 15 years provided for by Code § 8.01-236. Appellants filed a cross-complaint against the Linkouses in which they asserted that they were the joint owners of an undivided one-half interest in the property. They sought an accounting for rents collected by the Linkouses and a partition of the property by sale.

Although the two complaints were not formally consolidated, the circuit court conducted a joint ore tenus hearing on February 3, 2009, subsequently issuing a single opinion letter dated June 17, 2009, and entering concurrent decrees resolving both matters on August 18, 2009. Additional facts relevant to the issue raised in this appeal were adduced

at the February 3, 2009 hearing, and are admirably recited in the circuit court's opinion letter:

> At the time of purchase from the IRS, the subject property was in [a] severe state of decline and disrepair.  Thereafter, [the] Linkous[es] expended significant funds to repair, improve and maintain the property, greatly increasing its value to the present state.  In addition, [the] Linkous[es] leased the subject property to tenants who occupied the house continuously.  Rents were collected by [the] Linkous[es], and the property managed by them to the exclusion of anyone.  Real property taxes, delinquent as of the purchase date from [the] IRS, were paid by [the] Linkous[es] and kept current in payment thereafter by them.  No assertion of ownership was made by Hark[le]road, Rhea and [Poore] until being alerted of [the] Linkous[es]' action herein which was necessitated as a result of a proposed sale and transfer by [the] Linkous[es] to other persons.

The evidence further supported the circuit court's finding that "[f]ollowing the sale by [the] IRS, [the] Linkous[es] awaited for others to claim ownership, and no one came forward to do so, despite its sale being widely publicized and the dominion by [the] Linkous[es] being plainly visible."  However, during cross-examination, Theodore Linkous conceded that he had not performed a title search at the time he acquired his interest in the property in 1991.

At the conclusion of the hearing, Appellants contended that the Linkouses had not established adverse possession for the statutory period of 15 years because their possession of the property did not become hostile until they were advised that the conveyances in their chain of title did not convey a

4

fee simple interest in the property and until they became aware of the Appellants' claim to an undivided one-half ownership interest of the property. Appellants maintained that possession of the property by the Linkouses without knowledge or notice that Appellants had a joint right to occupy the property could not be hostile to the ownership interests of Appellants. Rather, they contended that one co-tenant may not assert a hostile possession of the property unless the other co-tenants are ousted from the property, either in fact or by affirmative notice of the intent to exclude them.

The circuit court rejected Appellants' contentions. Quoting Grappo v. Blanks, 241 Va. 58, 62, 400 S.E.2d 168, 171 (1991), the court noted that "[o]ne is in hostile possession if his possession is under a claim of right and adverse to the right of the true owner. One's possession is exclusive when it is not in common with others. Possession is visible when it is so obvious that the true owner may be presumed to know about it." (Internal citations omitted.) Applying this standard, the court concluded that the Linkouses had met their burden of proof to establish ownership of Appellants' interest in the property by adverse possession. Accordingly, the court granted the Linkouses title to the property in fee simple and

granted a judgment in their favor on Appellants' complaint for an accounting of rents and partition by sale of the property.

Appellants noted appeals in both cases and filed a consolidated petition for appeal. Rule 5:17(g). We awarded Appellants this appeal.

DISCUSSION

"'To establish title to real property by adverse possession, a claimant must prove actual, hostile, exclusive, visible, and continuous possession, under a claim of right, for the statutory period of 15 years. A claimant has the burden of proving all the elements of adverse possession by clear and convincing evidence.'" Helms v. Manspile, 277 Va. 1, 7, 671 S.E.2d 127, 130 (2009) (quoting Grappo, 241 Va. at 61, 400 S.E.2d at 170-71). Appellants concede that the Linkouses were in actual, exclusive, visible, and continuous possession of the property since 1991. Appellants contend, however, that the circuit court erred in finding that the Linkouses' possession of the property was "hostile" for the period between 1991 and 2007 because the Linkouses were unaware that their title gave them only an undivided one-half interest in the property during that time. Thus, Appellants contend that the Linkouses' "claim of right" did not create a hostile possession as to Appellants' interest in the property, because neither the Linkouses nor Appellants were on notice

6

that Appellants were being excluded from the property.  We disagree.

Appellants are correct that when two parties acquire property as co-tenants, one co-tenant may not rely on adverse possession to obtain exclusive fee simple title to the property unless notice, actual or constructive, is given to the other co-tenant of the intent to oust, thus making the occupying co-tenant's possession hostile.  See Leake v. Richardson, 199 Va. 967, 979, 103 S.E.2d 227, 236 (1958); Shenandoah National Bank v. Burner, 166 Va. 590, 593-594, 186 S.E. 92, 93 (1936) Stonestreet v. Doyle, 75 Va. 356, 378-79 (1881).  Indeed, there is a presumption against any occupancy of a co-tenant being hostile possession as to other co-tenants with whom he is in privity.  See Rutledge v. Rutledge, 204 Va. 522, 529, 132 S.E.2d 469, 474 (1963); Sanford v. Sims, 192 Va. 644, 651-52, 66 S.E.2d 495, 499 (1951) Braxton v. Phipps, 183 Va. 771, 774, 33 S.E.2d 650, 651 (1945).

However, this presumption does not apply when, as here, a stranger to the original co-tenancy takes possession of the property through a conveyance that on its face purports to give the new co-tenant the right to possess the whole property and he claims ownership of the whole.  Shenandoah National Bank, 166 Va. at 593, 186 S.E. at 93.  This is so because the stranger to the original co-tenancy is not in privity with the

7

other co-tenants and when he "enters into the exclusive possession of the land, claiming title to the whole, it is an ouster of the other co-tenants and the grantee so entering and claiming title may rely upon his adversary possession if continued [for] the statutory period." Id.; see also Preston v. Virginia Mining Co., 107 Va. 245, 248, 57 S.E. 651, 652 (1907); Johnston v. Virginia Coal & Iron Co., 96 Va. 158, 163, 31 S.E. 85, 86-87 (1898).

Contrary to Appellants' contention, under the circumstances of this case it was not necessary for the Linkouses, as the parties claiming adverse possession, to discover the fact of Appellants' co-tenancy and then give actual notice to Appellants of the Linkouses' intent to possess the property exclusively. Rather, the "intention to claim the land to the exclusion of the co-tenant may be shown by the acts of the claimant." Shenandoah National Bank, 166 Va. at 594, 186 S.E. at 94. Here, the acts of the Linkouses regarding their possession of the property to the exclusion of all others was so obvious that Appellants may be presumed to have known about it and, thus, had constructive notice of the Linkouses' intent to oust them. Moreover, we are of opinion that inherent in the doctrine of adverse possession is the concept that the law will not permit an owner to be so dilatory as to remain unaware of the exclusive use of his

property by a stranger claiming title for the statutory period of time.  That ignorance is not a defense to the occupier's assertion of adverse possession.

Next, we turn to an issue apparent from the undisputed facts, but not raised by the parties in the trial court or on appeal to this Court.  We address the issue, however, so that title to the property will be clear in the land records of the City of Bristol.

Although Appellants in their complaint state that Pauline Smith is deceased, the record does not establish when she died.  In Rutledge, 204 Va. at 528, 132 S.E.2d at 473, we held that "the possession of a life tenant, or one acquiring [her] interest, is not adverse to the remainderman during the term of the life estate."  Thus, in the present case it was necessary initially to resolve the continuing validity of Pauline Smith's life estate in Appellants' undivided one-half ownership interest in the property after 1982 in order completely to resolve the Linkouses' adverse possession claim.

As previously recited, in 1952 Pauline Smith owned an undivided one-half interest in the property.  Her husband, David Smith also owned an undivided one-half interest.  In 1976, under David Smith's will Pauline Smith acquired a life estate in David Smith's interest.  In 1982, Pauline Smith conveyed by deed her undivided one-half interest to

Frackelton.  That deed was silent as to her intent with regard to a conveyance of her life estate.  In 1991, the Linkouses acquired by deed from the IRS Frackelton's interest in the property that he had acquired by the deed from Pauline Smith.  Thus, the question becomes whether Pauline Smith retained her life estate in 1982 or whether her life estate was conveyed by these deeds so that in 1991 the Linkouses held an undivided one-half interest in the property and a life estate in the Appellants' interests in the property measured by the lifetime of Pauline Smith.

In determining the effect of these deeds, we are guided by familiar principles.  "In construing deeds, the intent of the grantor should be ascertained through the words used in the conveyance, where possible."  Vicars v. First Virginia Bank-Mountain Empire, 250 Va. 103, 106, 458 S.E.2d 293, 295 (1995); see also Trailsend Land Co. v. Virginia Holding Corp., 228 Va. 319, 325-26, 321 S.E.2d 667, 670 (1984).  "Where the terms of a deed are not ambiguous, [the Court] look[s] no further than the four corners of the instrument under review."  Vicars, 250 Va. at 106, 458 S.E.2d at 295 (internal quotation marks omitted).

The 1982 deed from Pauline Smith to Frackelton is not ambiguous.  It purports to convey the entire property in fee simple.  However, it only conveys her undivided one-half

interest in the property which she had acquired in 1952. It conveys that interest "in fee simple," a term which is not applicable to a life estate because a life estate in property is not a fee interest in property. Additionally, the deed does not contain the familiar terms "all right, title, and interest" which would include a life estate. Accordingly, we are of opinion that Pauline Smith retained her life estate in 1982 and, thus, neither Frackelton nor the Linkouses obtained that life estate by their deeds.

Under these circumstances, Frackelton's possession of the property from 1982 until 1991 was not adverse to Pauline Smith's life estate interest in the property because their interests were in privity. However, when the Linkouses acquired Frackelton's interest in the property by the March 21, 1991 deed from the IRS that privity was severed as to Pauline Smith's life estate interest. That severance of privity permitted the statutory period for adverse possession to begin to run against Pauline Smith's life estate interest in 1991, when the Linkouses' possession of the property was hostile to all ownership interests in the property. Therefore, regardless of the date of Pauline Smith's death under these circumstances, the statutory period of 15 years necessary to establish adverse possession as to her life estate interest would have run by March 22, 2006.

11

At common law applicable in Virginia, an adverse possessor who occupies property for the statutory period acquires title against the life tenant but not as against the remainderman. This is so because during the life tenancy the remainderman has no right to eject the adverse possessor. See e.g., Matthews v. W. T. Freeman Co., 191 Va. 385, 398, 60 S.E.2d 909, 915 (1950); Duggins v. Woodson, 117 Va. 299, 303-04, 84 S.E. 652, 653 (1915); Layne v. Norris, 57 Va. (16 Gratt.) 236, 241 (1861). Thus, in the present case if Pauline Smith remained alive in 1991, the Linkouses' adverse possession of the property at that time was only against her life estate, and not against the property interests of Appellants as remaindermen. Moreover, the statutory period necessary for the Linkouses to obtain title as against the property interests of Appellants would only have begun to run upon the date of Pauline Smith's death if that event occurred prior to the running of the statutory period otherwise necessary to extinguish her life estate. Fitzgerald v. Fitzgerald, 194 Va. 925, 929, 76 S.E.2d 204, 207 (1953); Matthews, 191 Va. at 398, 60 S.E.2d at 915.

As we already have noted above, the parties did not raise the issue of Pauline Smith's life estate in the context of when the statutory period for adverse possession began to run as against Appellants' interests in the property. The

12

Linkouses had the burden to prove when their claim of adverse possession accrued and they asserted that this occurred in 1991. Appellants did not challenge that assertion but, rather, maintained that the Linkouses' possession was not adverse because they were co-tenants. Likewise, in briefing this appeal Appellants have not raised any issue concerning the failure of the record to establish the date of Pauline Smith's death as relevant to when the statutory period for adverse possession by the Linkouses commenced as against Appellants' interests in the property. Rather, this issue was first raised by this Court sua sponte during oral argument. Accordingly, because Appellants did not raise this issue in the circuit court, Rule 5:25, or in their assignments of error, Rule 5:17, we are left to assume for purposes of our resolution of this appeal that the parties have agreed that the statutory period of 15 years under Code § 8.01-236 began to run against Appellants' interests in the property when the Linkouses took exclusive possession of the property in 1991.

The record in this case amply demonstrates that for more than fifteen years the Linkouses improved and maintained the property, paid the property taxes, and leased the property to tenants who were in open occupation thereon. During this time, Appellants made no effort to ascertain the condition of the property, to take responsibility for its upkeep, assume

their share of the tax burden, or demand a proportionate share of the rents collected. That they may have been unaware of their ownership rights is not relevant, since this lack of knowledge did not arise from any purposeful effort by the Linkouses to fraudulently keep them in ignorance. Rather, their rights in the property arose through the normal operation of the law of real property, wills, and intestate succession, and could have been ascertained by them at any time through a minimal act of due diligence.

## CONCLUSION

For these reasons, we hold that the circuit court did not err in ruling that the Linkouses had established by clear and convincing evidence all the necessary elements to obtain title to Appellants' one-half interest in the property by adverse possession. Accordingly, the decrees granting the Linkouses title in fee simple to the entire property and denying Appellants an accounting for rent and partition of the property by sale will be affirmed.

<u>Affirmed</u>.