Present:  All the Justices

DELORES B. VICARS, ET AL.

v.  Record No. 941447     OPINION BY JUSTICE ELIZABETH B. LACY
                                      June 9, 1995
FIRST VIRGINIA BANK-
MOUNTAIN EMPIRE, ET AL.

FROM THE CIRCUIT COURT OF WISE COUNTY
J. Robert Stump, Judge

In this appeal, we consider whether general language in a deed was sufficient to convey mineral interests in a tract of land which was not specifically identified in the deed.

This controversy arose when Dennis Barnette, trading as Kodiak Mining Company (Kodiak), removed coal from a 71.75-acre tract of land in Wise County.  Kodiak paid First Virginia Bank-Mountain Empire (the Bank) $189,799.59 in production royalties based on the Bank's claim that it owned the mineral interests in the tract.  The Bank's ownership claim was disputed by the appellants, Delores B. Vicars, June B. Belcher, Mickey B. Hicks, John D. Baker, Jr., and Eva A. Baker (the Baker family).  The Baker family maintained that the Bank had only a one-half interest in the tract's mineral rights and that they owned the other one-half interest.  The Baker family filed suit against Kodiak and the Bank, alleging that the coal was removed without the Baker family's permission and seeking damages for intentional trespass and waste.[1]

_____

[1]The Baker family originally sought an injunction to stop the mining of the coal but, on learning that the mining had terminated, the request for an injunction was withdrawn.  The trial court then granted the Baker family's motion to transfer the case to the law side of the court.

Prior to trial, Kodiak and the Bank filed a motion for partial summary judgment on the issue of damages. The trial court granted the motion, holding that the Baker family consented to the mining of the coal and agreed to the royalty rate paid by Kodiak mining. Based on this holding, the Baker family's potential damages were limited to damages based on their claimed ownership interest only: fifty percent of the royalties paid by Kodiak mining for the removal of the coal from the disputed tract, calculated to be $94,899.79.

The case proceeded to trial on the issue of the parties' ownership interests in the 71.75-acre tract. The trial court, citing Amos v. Coffey, 228 Va. 88, 320 S.E.2d 335 (1984), concluded that a 1923 deed from J.L. Litz and his wife (J.L.), the Baker family's predecessor in title, to A.Z. Litz (A.Z.), a predecessor in title to the Bank, conveyed J.L.'s interest in the 71.75-acre tract to A.Z. Therefore, the trial court held that the Baker family had no interest in the mineral rights of the tract and was not entitled to any damages stemming from the removal of coal from that tract. The Baker family appealed, assigning error to the trial court's decisions on both the ownership and damages issues. We consider these assignments in order.

I.

The ownership rights at issue initially depend on the construction of the 1923 deed. The Bank claims that the trial

court correctly held that this deed conveyed the mineral interests of J.L. in the 71.75-acre tract to A.Z. and, as successor in title to A.Z., the Bank now owns those interests. The Baker family asserts that the 1923 deed did not convey any interests in the 71.75-acre tract but that J.L. retained those interests until he died intestate in 1940. The Bank's interest in the mineral rights in the tract, the Baker family contends, did not arise until 1948, when J.L.'s daughter and sole surviving heir, Mabel Litz Baker, and her husband executed a deed conveying a one-half undivided interest in the mineral rights of the 71.75-acre tract to A.Z. Litz, Jr.

In construing deeds, the intent of the grantor should be ascertained through the words used in the conveyance, where possible. Trailsend Land Co. v. Virginia Holding Corp., 228 Va. 319, 325-26, 321 S.E.2d 667, 670 (1984). The trial court held that the 1923 deed was not ambiguous and neither party contends otherwise. Where the terms of a deed are not ambiguous, we "look no further than the four corners of the instrument under review." Id. at 325, 321 S.E.2d at 670. Therefore, we confine our review to the provisions of the 1923 deed.

The 1923 deed stated, in pertinent part, that J.L. conveyed "all of those certain tracts pieces or parcels of land lying and being situate in the county of Wise, Virginia, and more particularly bound and described as follows." This

- 3 -

language was followed by seven paragraphs, each of which described certain tracts of land by deed book reference and acreage. The referenced deeds were those used to convey the property to a predecessor in title, Milburn Gilliam. The disputed 71.75-acre tract was not among those tracts listed and described in the deed. The seventh paragraph of the deed, in addition to describing a parcel of land conveyed to Gilliam by W.J. Ireson and his wife, contained the following language:

 all the descriptions in the above given references
 are made a part and embodied as a part of this
 conveyance, and the intention of this deed is to
 convey all the rights, title and interest acquire[d]
 by [J.L.] from the wife and heirs of Milburn
 Gilliam's estate.

The Bank argues that the general language in the seventh paragraph referring to the conveyance of <u>all</u> the rights, title, and interest acquired from Gilliam included J.L.'s mineral rights in the 71.75-acre tract even though that tract was not specifically described or mentioned in the deed. This construction of the deed's language, the Bank contends, is supported by the decision in <u>Amos v. Coffey</u>, 228 Va. at 94, 320 S.E.2d at 338.

The deed in <u>Amos</u> conveyed specific parcels, identified by metes and bounds descriptions, "in or near the Town of Gretna" in Pittsylvania County. <u>Id.</u> at 90, 320 S.E.2d at 336. After specifically identifying the parcels in Gretna, the deed provided:

 It is the intention of the parties of the first
 part to convey to the party of the second part all

- 4 -

the real estate which they now own in Pittsylvania County, Virginia, including but not restricted to the lands described above.

Id.

We held that the deed not only conveyed the identified parcels, but also conveyed the grantors' one-twelfth undivided interest in a farm located near Gretna, even though the farm was not specifically identified in the deed. The transfer of this property was accomplished by the general words of conveyance contained in the deed. Id. at 94, 320 S.E.2d at 338.

Amos, however, is inapposite because there are significant differences between the intention and conveyance language in the two deeds. Not only does the Amos deed recite the intention of the grantors to convey "all" interests in land in Pittsylvania County, it unequivocally expands the conveyance to property beyond that specifically described in the deed. No analogous language is found in the deed at issue here.

A second and equally significant difference between Amos and the instant case is found in the language of conveyance. The Amos deed conveyed parcels located "in or near" Gretna. In Amos, the Court found that the property identified by the metes and bounds descriptions exhausted the class of property to be conveyed "in" Gretna. The general language in the deed identified a second class of property to be conveyed "near" Gretna. The grantors' interest in the farm in Pittsylvania

County located "near" Gretna was part of the second class of property conveyed. Id. at 94, 320 S.E.2d at 338.

In the instant case, there is only one class of property involved: "all of those certain tracts § of land lying § in the county of Wise, Virginia, and more particularly bound and described as follows" (emphasis added). The identification of the 11 specific tracts of land exhausted the class of tracts "in the county of Wise, Virginia and more particularly bound and described," as the Bank notes. However, unlike Amos, in which two classes of property were involved, the 1923 deed in this case does not identify any other class of property through which the mineral rights in the disputed tract could have been conveyed.

Furthermore, the phrase "all the rights, title and interest acquire[d] § from the wife and heirs of Milburn Gilliam's estate" does not describe the physical property conveyed but rather involves the nature of the ownership rights, or estate, conveyed. J.L. could convey mineral rights only, not a fee simple interest.

Considering the language used, we conclude that J.L. did not convey his interest in the 71.75-acre tract to A.Z. by the 1923 deed. The grantor's intention, as reflected in the 1923 deed, was to convey all his interest acquired from the wife and heirs of Gilliam's estate in those tracts in Wise County which were specifically described in the deed. Accordingly, the

Bank's interest in the mineral rights of the 71.75-acre tract is limited to the one-half undivided interest acquired by its predecessors in title through the 1948 deed from Mabel Litz Baker.

## II.

The Baker family also assigns error to the trial court's action in granting the Bank's motion for partial summary judgment limiting damages to one-half of the mining royalties paid by Kodiak. The Baker family contends that "material facts were in dispute concerning the issue of trespass or waste damage." We disagree.

As the basis for granting the motion for partial summary judgment, the trial court relied on a January 6, 1992 letter from the Baker family's attorney to the Bank's attorney.[2] That letter stated, in part, "my clients do not wish to impede the mining on the tract while these title questions are being reviewed." Kodiak received a copy of this letter.

The Baker family states on brief that they agreed that they "would not stop efforts to strip mine the tract," but qualified that agreement by limiting it to "a short time while counsel for the Bank provided proof that the Baker family did

---

[2]This correspondence was attached to the Baker family's response to the Bank's request for admissions. These responses were before the trial court for determination of the motion for partial summary judgment.

not own a one-half interest in the subject mineral tract."
This limitation, however, is not contained or reflected in the
January 6, 1992 letter, and subsequent correspondence between
counsel for the Bank and the Baker family contained no
reference to, or indication of, any change in the position
taken in the letter regarding the mining operation.  The focus
of the entire correspondence concerned the title dispute.
Furthermore, the Baker family does not claim that they told the
Bank or Kodiak that they had changed their position and wanted
the mining operations terminated.

We agree with the trial court that the statement in the
January 6, 1992 letter, as a matter of law, constituted consent
by the Baker family to the mining operations.  It is axiomatic
that a party cannot collect damages based on theories of waste
or trespass when the party consented to the very actions
alleged to constitute trespass or waste.  See, e.g., Cooper v.
Horn, 248 Va. 417, 423, 448 S.E.2d 403, 406 (1994)("trespass is
an unauthorized entry"); Chosar Corp. v. Owens, 235 Va. 660,
664, 370 S.E.2d 305, 308 (1988)(mining without consent of all
co-tenants constituted waste).  Accordingly, any dispute in
material facts relating to the issue of trespass or waste
damages was irrelevant.

For the reasons stated, we will reverse the trial court's
judgment denying the Baker family's claim to an undivided one-
half interest in the minerals and mineral rights on the 71.75-

acre tract, affirm the judgment with respect to the damage

issue, and enter final judgment.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>