Present: All the Justices

HERMAN E. LEEMAN, ET AL.

v. Record No. 992258     OPINION BY JUSTICE DONALD W. LEMONS
                                         June 9, 2000
TROUTMAN BUILDS, INC.

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

In this appeal we consider whether summary judgment was properly granted in a dispute over a restrictive covenant.

I

Garfield Manor Corporation ("Garfield Manor") subdivided certain land in Arlington County into seven lots and recorded the plat of the subdivision under the name "Oakcrest." In 1927, Garfield Manor conveyed Lot 6B with a deed containing a restrictive covenant that stated: "Not more than one dwelling shall be erected on said lot except with written approval of the vendor." On June 3, 1958, the State Corporation Commission terminated the corporate existence of Garfield Manor.

On May 27, 1998, Troutman Builds, Inc. ("Troutman") sent a letter to each of the other ten landowners in the Oakcrest subdivision stating that Troutman had a contract to purchase Lot 6B from Joyce Faherty, James Holland, Jr., and Jon Holland, and informing the landowners that the County had preliminarily approved Troutman's plans to subdivide Lot 6B

into two lots. The stated plan was for the Troutman family to live in the existing house on the first resubdivided lot and for Troutman to build a new house on the second resubdivided lot. All homeowners were asked to waive the restrictive covenant. In its letter, Troutman stated that the homeowners in the subdivision were the successors to Garfield Manor and that one owner's refusal to waive the restriction could void the project. After Troutman failed to get all the homeowners to agree to waive the restrictive covenant, Joyce Faherty, James Holland, Jr., and Jon Holland instituted a declaratory judgment action against Garfield Manor in the Circuit Court of Arlington County, Law No. 98-918 ("Faherty"). No notice was given to the ten homeowners who had received Troutman's letter and no homeowners were named as parties.

On December 16, 1998, the trial court entered a default judgment against Garfield Manor in the Faherty case, holding that although the property at issue was burdened with the restrictive covenant, the covenant was void because it was impossible to perform "as no vendor [exists] to give permission for the construction of a second dwelling on the lot."

On May 13, 1999, Herman E. and Mary E. Leeman and their neighbors Raymund A. and Berta S. Plunkett filed a bill of complaint for declaratory judgment against

2

Troutman seeking a declaration that (1) the final order in Faherty was not enforceable against them and, (2) the restrictive covenant barring the construction of an additional residence on the lot was enforceable against Troutman.[1]  Among the allegations in the bill are the assertions that both the Leemans and the Plunketts own property in the same subdivision and "are subject to and protected by the same restrictive covenant derived from a common grantor along with the Defendants."  After referring to the subdivision plan and the specific covenant against building more than one dwelling per lot, they further alleged that the grant from Garfield Manor "was intended to benefit all land and land owners from the common grant so designated."

Troutman filed its Answer and Grounds of Defense and moved for summary judgment.  The trial court granted summary judgment in favor of Troutman, stating that "the covenant at issue cannot be performed under any circumstances because the vendor, Garfield Manor Corporation, no longer exists and therefore can neither grant nor deny permission to construct further dwellings

---

[1] At some time after the conclusion of the Faherty litigation, Joyce Faherty, James Holland, Jr., and Jon Holland transferred their interest in the subject property to Troutman.

3

on the Property."  The order further stated: "by the final order in [Faherty], . . . this court determined that the covenant at issue is void as unenforceable as a matter of law" and "more than 21 days has elapsed since the entry of the final order in [Faherty]" and that "there are no material facts at issue."  This appeal followed.

The Leemans and Plunketts argue that the covenant in question is not impossible to perform and that the prior adjudication in Faherty is not binding upon them because they were not parties to, and had no notice of, the proceedings. Additionally, the Leemans and Plunketts maintain that the pleadings sufficiently allege material questions of fact concerning the interpretation of the covenant, thereby making summary judgment inappropriate.

Troutman asserts that the "covenant at issue is based on the continued existence of Garfield Manor Corporation to give or deny permission to construct additional dwellings on the Property.  However, because Garfield Manor Corporation was terminated, it can no longer give or deny that permission, making the covenant impossible to perform."  Additionally, Troutman maintains that the final unappealed order in Faherty determining that the covenant was impossible to perform is

4

binding upon the Leemans and the Plunketts and is dispositive of the issues in this case.

## II

The Leemans and the Plunketts allege in their first assignment of error that "[t]he trial court erred in ruling that an ex parte final order in a case involving the subject matter restrictive covenant is binding on necessary parties not named in the action in which the final order was issued."

We have stated that:

> One of the fundamental prerequisites to the application of the doctrine of res judicata is that there must be an identity of parties between the present suit and the prior litigation asserted as a bar. A party to the present suit, to be barred by the doctrine, must have been a party to the prior litigation, or represented by another so identified in interest with him that he represents the same legal right.

Dotson v. Harman, 232 Va. 402, 404-05, 350 S.E.2d 642, 644 (1986).

The Leemans and the Plunketts were not parties to the prior litigation in Faherty and were not "represented by another so identified in interest with [them] that he represents the same legal right." We hold that the judgment in Faherty does not preclude the Leemans and Plunketts from maintaining the current action.

## III

5

Summary judgment is appropriate only when there are no material facts genuinely in dispute on a dispositive issue. Rule 2:21. See generally, Stone v. Alley, 240 Va. 162, 392 S.E.2d 486 (1990). Construction of a controlling document may be an appropriate basis for summary judgment in Virginia, see Vicars v. First Virginia Bank-Mountain Empire, 250 Va. 103, 458 S.E.2d 293 (1995)(construction of letter and other instruments), but only where it is shown that the moving party is entitled to judgment as a matter of law. See Rule 2:21; Ciejek v. Laird, 238 Va. 109, 113, 380 S.E.2d 639, 641-42 (1989) (inappropriate to grant summary judgment based on controlling document when the instrument is ambiguous, or raises interpretation issues, requires parol evidence, or turns on other proof of its meaning or the intentions of the parties to the instrument).

Here, the trial court concluded that the termination of Garfield Manor's corporate existence made performance of the covenant impossible. This conclusion was erroneous. It is not impossible to perform the covenant. The covenant literally requires that "not more than one dwelling shall be erected on said lot." Compliance with the terms of the covenant is simple: no further construction of dwellings may be made on the lot. See,

6

e.g., <u>Woodward v. Morgan</u>, 252 Va. 135, 138, 475 S.E.2d 808, 810 (1996).

Additionally, issues of material fact which were not susceptible of summary adjudication on the state of this record include: (1) whether the covenant in the 1927 deed was a personal right reserved to Garfield Manor or was a covenant running with the land and, (2) whether the grantor's intent was to benefit common grantees with similar restrictions, and create a common scheme of development allowing neighboring landowners to enforce equitable servitudes upon the subject property. "We have recognized two separate and distinct types of restrictive covenants: the common law doctrine of covenants running with the land and restrictive covenants in equity known as equitable easements and equitable servitudes." <u>Sloan v. Johnson</u>, 254 Va. 271, 274-75, 491 S.E.2d 725, 727 (1997). <u>See</u> <u>also</u> <u>Mid-State Equip. Co., Inc. v. Bell</u>, 217 Va. 133, 141, 225 S.E.2d 877, 884 (1976). A more complete evidentiary record is necessary in the present case to resolve these issues.

Troutman maintains that the covenant involved in <u>Allison v. Greear</u>, 188 Va. 64, 49 S.E.2d 279 (1948), "is almost identical to the covenant at issue". Although

7

some similarities exist, we declined to decide in Allison one of the important issues raised in this case.

In Allison, the deed in question recited:

> The parties of the second part, by accepting this deed, covenant for themselves, their heirs and assigns, that the real estate hereby conveyed will not be used by the parties of the second part, their heirs or assigns, for the purpose of conducting thereon a mercantile business, without the written consent of the parties of the first part, or their children, or grandchildren.

Id. at 65, 49 S.E.2d at 279. The grantors, who owned and operated a mercantile establishment on neighboring property, sought to prevent the grantees from operating a mercantile establishment on their property. Id. at 65-66, 49 S.E.2d at 279. The trial court issued an injunction in enforcement of the covenant. Id. at 65, 49 S.E.2d at 279.

In reversing and vacating the injunction, we placed great emphasis on the testimony of the grantors that the purpose of the restriction was "the protection of our own business interests and for the protection of our own children." Id. at 66, 49 S.E.2d at 280. The grantors sold their lot, including the building in which they had conducted a mercantile business, prior to the controversy in question. Id. at 66, 49 S.E.2d at 279. We concluded:

8

'From the language in the restriction itself read in the light of its purpose as testified to by the Greears, the conclusion is inescapable that, if valid, it is not a covenant running with the land. At most, . . ., it is only a personal restriction which can be released at the will of the grantors, or their children, or their grandchildren, at any time. It being a personal restriction for the sole purpose of restraining competition in their mercantile business, and they having sold their business in 1945, they have no mercantile business to protect. There is no evidence that they intend, in the future, to reestablish such a business, or that their children or their grandchildren (the latter being infants) will ever desire to open or conduct a mercantile business in this neighborhood. Under these circumstances, if the restriction were originally valid, its duration, so far as the grantors are concerned, continued only during the time they were actually engaged in the mercantile business, which terminated in 1945.

'In 14 Am. Jur., Covenants, at the end of paragraph 205, it is clearly stated that, "A covenant personal to one is terminated by his death or by his ceasing to have an interest in the property, his use of which is benefited by the restriction."

Id. at 67, 49 S.E.2d at 280.

In this case, the intent of the developer, Garfield Manor, is relevant to determine whether the covenant in question runs with the land or is personal in nature. The language of the deed, which here recites that the restrictions are to run with the land, is evidence of intent but may not be dispositive of the question. Significantly, in Allison, we reserved judgment

9

concerning the rights of neighboring property owners, stating:

> Our decision is limited to the proposition that the grantors are not entitled to equitable relief under the facts.  The questions that might arise in the future as to the rights of the lot owners, as between themselves, or as between themselves and the grantors in the restriction are not decided.

Id. at 67, 49 S.E.2d at 280.

IV

The trial court erred in deciding that the covenant in question is unenforceable because of impossibility of performance.  Because material questions of fact are placed into issue by the present state of the record in this litigation, further determinations on the enforceability and application of the covenant must await factual submissions, and summary judgment was improper. Rule 2:21.

Accordingly, we will reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.