## CIRCUIT COURT OF ARLINGTON COUNTY

Estate of Laura Feury et al.

v.

Princeton Insurance Co.

August 5, 2005

Case Nos. (Law) 04-551 and (Chancery) 04-808

BY JUDGE JOANNE F. ALPER

This matter comes before the Court on the parties' Motions for Summary Judgment. Having heard the oral arguments of counsel on July 20, 2005, examined the briefs prepared by the parties, and taken this matter under advisement, the Court issues the following ruling.

### I. Statement of the Case

This case arises from a medical malpractice claim filed on behalf of the beneficiaries and administrators of the Estate of Laura Feury (hereinafter "the Estate")[1] seeking to be reimbursed by Princeton Insurance Company (hereinafter "Princeton") for a judgment based on the medical negligence of Dr. Bernard Member rendered by the Circuit Court of Spotsylvania County. Dr. Member was a licensed psychiatrist in the Commonwealth of Virginia. He also practiced under a corporation named

---

[1] At the time of Laura Feury's death, the statutory beneficiaries of the estate were Frances K. Feury (mother), Eugene P. Feury (father), Patrick Feury (brother), and Terrence Feury (brother). The administrators of the estate are Frances K. Feury and Eugene P. Feury.

Family Psychiatry of Fredericksburg, P.L.L.C. (hereinafter "Family Psychiatry"). Laura Feury was the estranged wife of Dr. Member and also worked for him at his practice.

The material facts were set out in the pleadings of both parties and are not in dispute. Sometime in March 2001, Dr. Member removed four Fentanyl patches legally prescribed for his mother from her apartment in New York. Later that month, Dr. Member provided these Fentanyl patches to his estranged wife, Laura Feury, who suffered from endometriosis. Endometriosis is an inflammation of the ovarian tissue, resulting in extreme pelvic pain during menses. Laura Feury had been prescribed a number of pain relievers for this condition. Dr. Member did not write a prescription nor did he communicate an oral prescription order to a licensed pharmacist when he gave Ms. Feury the Fentanyl patches.

On June 16, 2001, Laura Feury was found dead in her home with four Fentanyl patches affixed to her back. It was later confirmed that Ms. Feury died from a Fentanyl overdose.

During the time period described above, Dr. Member and Family Psychiatry were insured under a policy of professional liability issued by Princeton. The Policy provided coverage for both Dr. Member and Family Psychiatry, separately and individually. The relevant provisions pertaining to this motion are Coverage M, Coverage N, and the Exclusion provision. Coverage M, which provides coverage to Dr. Member individually, states:

### Coverage M: Individual Professional Liability

We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies. The injury must be caused by a "medical incident" arising out of your supplying or failure to supply professional services. The "medical incident" must happen on or after the retroactive date and claim must first be made against you and reported to us before the end of the policy term on the Declarations of this policy.

*See* The Estate's Exhibit J and Princeton's Exhibit E, *Professional Liability Coverage Form – Occurrence Plus.*

Coverage N, which provides coverage to Family Psychiatry, states:

*Coverage N: Partnership, Association, or Corporation Professional Liability*

> We will pay all amounts up to the limit of liability which you become legally obligated to pay as a result of injury to which this insurance applies. The injury must be caused by a "medical incident" arising out of your supplying or failure to supply professional services by you or anyone for whose professional acts or whose failure to act you are legally responsible. The "medical incident" must happen on or after the retroactive date and claim must first be made against you and reported to us before the end of the policy term on the Declarations of this policy.

*See* The Estate's Exhibit J and Princeton's Exhibit E, Professional Liability Coverage Form – Occurrence Plus.

The exclusion provision states that "This insurance does not apply for . . . (a) injury resulting from your performance of a criminal act." *See Id.* The policy limit for Dr. Member and Family Psychiatry was $2,000,000.00 for each medical incident.

On January 29, 2003, the Estate filed an action in Spotsylvania County Circuit Court against Dr. Member and Dr. Member, d/b/a/ Family Psychiatry of Fredericksburg, claiming that Dr. Member's negligence caused Ms. Feury's death and that Family Psychiatry was liable under the doctrine of *respondeat superior.*[2]

On March 5, 2003, Princeton sent a "Reservation of Rights" Letter (hereinafter "the Letter") to Dr. Member at his home address, reserving its rights under the policy. Princeton did not send a letter addressed to Family Psychiatry. The Letter reserved Princeton's rights to deny coverage only under Coverage M and not Coverage N. *See* The Estate's Exhibit H and Princeton's Exhibit F. Princeton provided a defense to both defendants in the Spotsylvania case.

On May 7, 2004, after a three day jury trial, the Estate obtained a verdict against Dr. Member and Dr. Member, d/b/a Family Psychiatry of Fredericksburg, P.L.L.C., jointly and severally, in the amount of

___
[2] The Estate originally filed an action with four counts: Count I: Medical Malpractice; Count II: Negligence Per Se; Count III: Punitive Damages; and Count IV: *Respondeat Superior.*

$1,410,000.00 with pre-judgment interest from June 16, 2001.[3]

Subsequently, the Estate filed a Motion for Judgment in this Court on September 1, 2004, seeking indemnification by Princeton for the judgment against Dr. Member and Family Psychiatry due to the insolvency of both parties. Shortly thereafter, Princeton filed a Motion for Declaratory Judgment in Spotsylvania County that was later transferred to this Court and consolidated with the Estate's Motion for Judgment.

## II. Standard for Summary Judgment

This Court may grant a motion for summary judgment in cases where no material facts are genuinely in dispute. Va. Sup. Ct. R. 3:18; *Thurmond v. Prince William Prof'l Baseball Club, Inc.*, 265 Va. 59, 64, 574 S.E.2d 246, 250 (2003); *Majorana v. Crown Cent. Petroleum Corp.*, 260 Va. 521, 525, 539 S.E.2d 426, 428 (2000). A grant of summary judgment must be based upon undisputed facts established by pleadings, admissions in pleadings, and admissions made in answers to requests for admissions. *Hanley v. Stanley Martin Cos.*, 266 Va. 345, 351, 585 S.E.2d 567, 571 (2003).

Once it is established that there are no material facts genuinely in dispute, the Court must determine whether the "moving party is entitled to judgment as a matter of law." *Leeman v. Troutman Builds, Inc.*, 260 Va. 202, 206, 530 S.E.2d 909, 911 (2000).

Both parties have filed summary judgment motions and agree that this case is appropriate for such disposition.

## III. Analysis

This case involves two questions that appear to be matters of first impression in the Commonwealth: (1) whether Family Psychiatry of Fredericksburg, P.L.L.C., was fairly notified of Princeton's position when Princeton's Reservation of Rights Letter was sent only to Dr. Member and did not reference Coverage N; and (2) whether the criminal act exclusion in the policy denies coverage to both Dr. Member and Family Psychiatry due to Dr. Member's criminal act of illegally possessing Fentanyl and dispensing it to his estranged wife, Laura Feury.

---

[3] The jury verdict was only based upon Counts I and IV, as Counts II and III were nonsuited by the Estate.

## A. Reservation of Rights Letter

The first issue is whether the Reservation of Rights Letter sent to Dr. Member was effective as to Family Psychiatry. In cases where an insurance company provides a legal defense to the insured, the insurer is generally liable for amounts awarded against the insured because the insurer's actions indicate that the policy coverage applies, and therefore, the insurer is estopped from subsequently seeking to avoid liability under the policy. *See State Farm Fire & Cas. Co. v. Mabry*, 255 Va. 286, 291, 497 S.E.2d 844, 846 (1998). However, if an insurer provides a reservation of rights, the insurer is not deemed to have waived its defense of lack of coverage due to its participation in the tort litigation. *Id.* Nevertheless, under Virginia law, an insurance company must inform all insured parties of its position in a timely manner in order for the company not to be estopped or to waive a claim or defense of lack of coverage. *See Norman v. Insurance Co. of North Am.*, 218 Va. 718, 726, 239 S.E.2d 902, 907 (1978).

Princeton argues that the Reservation of Rights letter was effective to both Dr. Member and to Family Psychiatry because Dr. Member was the sole corporate officer for Family Psychiatry and notice to Dr. Member constituted notice to Family Psychiatry. The Estate takes the position that the letter was ineffective to Family Psychiatry because the letter never mentioned Coverage N, the provision that provided separate coverage to Family Psychiatry as a corporate entity.

This Court finds that the Reservation of Rights letter sent to Dr. Member was ineffective as to Family Psychiatry and did not constitute adequate notice due to its failure to mention the coverage that applied to the corporate entity. Furthermore, the letter was sent to Dr. Member at his personal address and never mentioned either the separately insured Family Psychiatry or Coverage N. Neither Dr. Member nor Family Psychiatry was put on notice that Princeton was reserving its rights under Coverage N and thus, Princeton is estopped from denying coverage under that provision of the policy.

## B. Criminal Act Exclusion

The second issue that this Court must consider is whether Princeton may deny coverage under the Policy's exclusion for an "injury resulting from your performance of a criminal act." The basis for Princeton's reservation of rights and denial of coverage under the Policy is the

criminal act exclusion. Regardless of the efficacy of the reservation of rights letter, Princeton is liable to indemnify both Dr. Member and Family Psychiatry for the judgments against them if the criminal act exclusion in the Policy is not applicable.

Under the Virginia Drug Control Act, Fentanyl is a Schedule II drug, which makes it a controlled substance. *See* Va. Code Ann. § 54.1-3448. Princeton correctly points out that it is illegal for a person to "knowingly or intentionally to possess a controlled substance" except pursuant to a valid prescription or as otherwise permitted under the Drug Control Act. *See Id.* at § 18.2-250.

Princeton claims that because Dr. Member committed a criminal act of illegally possessing Fentanyl, the criminal act exclusion in the policy precludes coverage and thus, the Estate is barred from recovery. The Estate argues that, for the Policy to exclude coverage, the criminal act must have *caused* the injury; Ms. Feury's death must have been caused by Dr. Member's criminal act. The Estate argues that it was not the crime of possessing the Fentanyl or providing Ms. Feury the Fentanyl that resulted in her death, but rather Dr. Member's failure to examine, evaluate, instruct, counsel, or conduct a follow-up with Ms. Feury regarding her use of the Fentanyl.

Both parties provide arguably reasonable interpretations of the criminal act exclusion in the Policy. However, it is well settled in Virginia, that policies of insurance are to be liberally construed in favor of the insured. *Sterling Ins. Co. v. Dansey*, 195 Va. 933, 939, 81 S.E.2d 446, 450 (1954). If language in a policy is unambiguous, courts will give words ordinary meaning and enforce the policy as written. *Atlas Underwriters, Ltd. v. Meredith-Burda, Inc.*, 231 Va. 255, 259, 343 S.E.2d 65, 68 (1986). The principal purpose of insurance is protection, and policies and language in a policy, having been written by insurance companies, must be construed most strongly against them. *Hartford Accident & Indem. Co. v. Singer*, 185 Va. 620, 626, 39 S.E.2d 505, 507 (1946).

This Court finds that the language in the policy drafted by Princeton regarding the criminal act exclusion is clear and requires that the injury must be a "direct" result from the performance of a criminal act if the exclusion is to apply. The mere fact that Dr. Member committed a criminal act when he illegally possessed and gave the Fentanyl patches to Ms. Feury was not the cause of her death. Laura Feury's death was caused by Dr. Member's breach of a standard of care. The proximate cause of Laura Feury's death was Dr. Member's failure to write a proper prescription for Fentanyl, failure to perform a physical exam on Ms.

Feury, failure to give proper warnings or instructions, and a failure to do a follow-up exam on Ms. Feury.

The fact that criminal activity was involved does not void the entire policy. The Policy clearly states that insurance does not apply for an "injury resulting from your performance of a criminal act." Princeton drafted the Policy and was free to use any language it deemed appropriate to exclude coverage for criminal acts. Accordingly, the criminal act exclusion does not apply in this case and Princeton is obligated to pay the judgment and interest to the Estate.

## IV. Conclusion

This Court holds that the Reservation of Rights Letter was ineffective as to Family Psychiatry and that the criminal act provision in the policy does not apply in this case.

Accordingly, for the reasons stated herein, the Estate's motion for summary judgment is granted and Princeton Insurance's motion for summary judgment is denied.