## CIRCUIT COURT OF HANOVER COUNTY

United Leasing Corp.

v.

MDA Lending Solutions, Inc.

v.

Reliable Chain Abstracting, Inc.

February 15, 2011

Case No. CL09000712-01

BY JUDGE J. OVERTON HARRIS

Before the Court are United Leasing Corporation's ("ULC") and MDA Lending Solution's ("MDA") motions for partial summary judgment. The Court heard argument on January 26, 2011, and took the matters under advisement. After careful review and consideration, the Court rules as follows.

### I. *Background*

This action arises out of ULC's Amended Complaint alleging breach of contract and breach of warranty. ULC sets forth the following allegations in its Amended Complaint. ULC is engaged in the business of providing financing for small businesses. In or about December 2006, ULC was evaluating a proposal to finance a business for "Borrower." To approve the transaction, ULC and its lender required collateral to secure the obligations. One of Borrower's principals offered as collateral a parcel of real estate located in Norfolk, Virginia. Thereafter, ULC engaged the services of MDA

to perform a title search on the property. MDA provided ULC with a title search report for the property indicating that the property was owned solely by William A. Goldstein and that there were no judgment liens against the property. In reliance on the title report, on January 23, 2007, ULC loaned Borrower $2,000,000. The parties executed a note, which was secured by a deed of trust on the property. The note was renewed by a promissory note dated February 15, 2008.

On April 2, 2009, ULC ordered an updated title search report from MDA on the property in preparation to commence foreclosure proceedings. The updated title search report indicated that William A. Goldstein was only a one-half owner of the property and that there were several liens against the property, which were not disclosed in the initial title report. A default has occurred under the renewal note, and ULC has, in accordance with the terms of the renewal note, accelerated all sums due thereunder. On April 8, 2010, ULC confessed judgment against the Borrower and the Guarantors in the amount of $2,074,587.20.

In Count I of the Amended Complaint, ULC alleges that MDA had a duty to accurately perform a title search of the property and to accurately report the findings of its search to ULC. MDA breached its contractual duty by failing to discover all record owners of the property and the existing judgment liens thereon. In Count II of the Amended Complaint, ULC alleges that, pursuant to the terms of the title report, MDA warranted to ULC that the report had been accurately reported from the public record sources available as of the effective date of the report. On or about November 22, 2006, TransUnion Settlement Solutions, Inc. (a predecessor in interest to MDA)[1] entered into a Real Estate Settlement Services Purchase Agreement with ULC (the "Agreement"). ULC alleges that, pursuant to the terms of the Agreement, the limitations on the amount of the warranty is the amount of ULC's actual damages.

ULC requests that the Court grant partial summary judgment against MDA on the issue of liability on its claims for breach of contract and breach of warranty and that the Court rule that ULC is entitled to an award of actual damages arising out of its claim for breach of contract. MDA requests that the Court grant partial summary judgment finding that MDA did not breach the contract or the warranty between ULC and MDA and that ULC is not entitled to an award of actual damages for its breach of contract claim.

## II. *Standard of Review*

---

[1]   MDA denies that it is a successor in interest to TransUnion Settlement Solutions, Inc. Counsel for MDA stated at the January 26, 2011, hearing that "it was just a name change." The issue is not pertinent for purposes of the parties' motions for partial summary judgment.

Summary judgment should be granted where "the only dispute concerns a pure question of law. It applies only to cases in which no trial is necessary because no evidence could affect the result." *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 5, 82 S.E.2d 588, 591 (1954). "Summary judgment shall not be entered if any material fact is genuinely in dispute." Va. Sup. Ct. R. 3:20. "The burden of establishing the nonexistence of a genuine issue of fact is on the party moving for summary judgment, and the court must view the facts and inferences in a light most favorable to the non-moving party." W. Hamilton Bryson, *Virginia Civil Procedure* § 6.07 (4th ed. 2005) (citing *Carson v. LeBlanc*, 245 Va. 135, 427 S.E.2d 189 (1993)). Summary judgment is based upon "the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence." Va. Sup. Ct. R. 3:20.

In Virginia, "[c]onstruction of a controlling document may be an appropriate basis for summary judgment" where it is shown that the moving party is entitled to summary judgment as a matter of law. *Leeman v. Troutman Builds, Inc.*, 260 Va. 202, 206, 530 S.E.2d 909, 911 (2000) (citing *Vicars v. First Virginia Bank-Mountain Empire*, 205 Va. 103, 458 S.E.2d 293 (1995)). It is "inappropriate for a court to grant summary judgment based on a controlling document when the instrument is ambiguous, or raises interpretation issues, requires parol evidence, or turns on other proof of its meaning or the intentions of the parties to the instrument." *Id.* (citing *Ciejek v. Laird*, 238 Va. 109, 113, 380 S.E.2d 639, 641-42 (1989)).

## III. *Analysis*

### A. *Breach of Contract*

Pursuant to the parties' Agreement, Delaware law applies to the construction and interpretation of the Agreement. Under Delaware law, the elements of a breach of contract claim are (1) the existence of the contract, whether express or implied; (2) the breach of an obligation imposed by that contract; and (3) the resultant damage to the plaintiff. *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). With respect to the construction of a contract:

> Delaware adheres to the "objective" theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party. [A court] will read a contract as a whole, and we will give each provision and term effect, so as not to render any part of the contract mere surplusage. [A court] will not read a contract to render a provision or term "meaningless or illusory." [A] contract must contain all material terms in order to be enforceable, and

specific performance will only be granted when an agreement is clear and definite and a court does not need to supply essential contract terms.

*Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citations omitted).

When the contract is clear and unambiguous, a court will give effect to the plain-meaning of the contract's terms and provisions. *Id.* at 1159-60. However, when a court may reasonably ascribe multiple and different interpretations to a contract, it will find that the contract is ambiguous. *Id.* at 1160. "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Lorillard Tobacco Co. v. American Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). Furthermore, "ambiguity does not exist where a court can determine the meaning of a contract without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Id.* "Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty. The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Id.*

In this case, Section 1 of the Agreement states that "Customer [ULC] engages TransUnion [MDA] to provide the real estate settlement services identified on Schedule 1 of this Agreement . . . in accordance with the terms and conditions set forth in this Agreement and TransUnion accepts such engagement." Schedule 1 of the Agreement sets forth the specific services to be provided to ULC, including "Property and Title Solutions," which are identified in Schedule 4. Schedule 4 defines "Property Solutions" as follows:

> *Property Search Report.* Provides current ownership information for residential properties, including current vested owner, tax information, effective date of search, mortgages/liens and encumbrances, and a full Legal Description, as shown in the public records. These reports are partial title searches as shown in the public records only and are not intended to be a legal interpretation of title nor are they title insurance.

MDA argues that the contract is clear and unambiguous in that it did not impose upon MDA a contractual duty to perform a complete and accurate title search. In support of its argument, MDA relies on Schedule 4 of the Agreement wherein MDA only promised to provide "partial title searches" as opposed to complete title searches. MDA also points out that nowhere in the contract does it state that MDA promises to provide an "accurate" title search.

ULC argues that that Schedule 4 of the Agreement required MDA to provide ULC with current ownership information, including vested owner, mortgages, and encumbrances as shown in the public records as of the date of the title examination. The statement that the "reports are partial title searches as shown in the public records only" is clear and unambiguous language which imposed upon MDA a contractual duty to provide ULC with a proper title search as shown in the public records. ULC is not alleging that MDA failed to do a complete title search outside of the public records. Rather, ULC is alleging that MDA's failure to provide a proper title search *as shown in the public records* constitutes a breach of the Agreement.

An objective, reasonable reading of the contract in its entirety leads the Court to conclude that Schedule 4 of the Agreement is clear and unambiguous. It is clear that, under the Agreement, MDA had a contractual duty to provide ULC with "current ownership information for residential properties, including current vested owner, tax information, effective date of search, mortgages/liens and encumbrances, and a full Legal Description, as shown in the public records." Schedule 4 does not merely state that the "reports are partial title searches." It states that the "reports are partial title searches *as shown in the public records only.*" While the search may be considered a partial search inasmuch as MDA only had a duty to provide the information required under Schedule 4 as shown in the public records as of the date of the title examination, the Court cannot find that a reasonable person in the position of the parties would have interpreted Schedule 4 to mean that MDA was only required to conduct a search of the public records and submit an inaccurate or partial report of their findings.

It is undisputed that the Title Report dated December 20, 2006, provided by MDA to ULC indicated that the property was owned solely by William A. Goldstein and that there were no judgment liens against the property. It is also undisputed that this information was erroneous. MDA's updated title report dated April 8, 2009, revealed that, in December 2006, William A. Goldstein owned only a one-half interest in the property and that there were several tax and judgment liens against the property.

Having found that the Agreement between MDA and ULC is unambiguous and gave rise to a duty which was breached by MDA, the Court grants ULC's request for partial summary judgment on the issue of breach of contract. The Court denies MDA's request that the Court grant partial summary judgment finding that ULC did not breach the contract between ULC and MDA.

## B. *Breach of Warranty*

Count II of ULC's Amended Complaint is a claim for breach of warranty. ULC requests that the Court grant summary judgment finding that MDA provided a warranty to ULC in the December 20, 2006, title

report warranting the accuracy of the report based on the public records and that MDA breached the warranty. The warranty specifically states:

> WARRANTY: TUSSI [MDA] warrants to you, the customer [ULC], that the public record information contained in this report has been accurately reported from the public record sources available as of the effective date of this report.

ULC is arguing that the information contained in the December 20, 2006, report was inaccurate because the report failed to disclose all record owners and liens on the property as shown in the public records.

MDA argues that it has not breached a warranty because the Agreement does not provide any warranty. According to MDA, the Section 4 of the Agreement between MDA and ULC specifically disclaims all express and implied warranties. Section 4 states:

> *Disclaimer of Representations and Warranties.* OTHER THAN AS STATED IN THIS AGREEMENT, NEITHER TRANSUNION [MDA] NOR CUSTOMER [ULC] MAKES ANY REPRESENTATION OR WARRANTY TO THE OTHER PARTY, EACH PARTY DISCLAIMS ALL IMPLIED WARRANTIES IN CONNECTION WITH THE SERVICES PROVIDED UNDER THIS AGREEMENT, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

MDA's reliance on the disclaimer of warranties provision in Section 4 of the Agreement is misplaced. ULC is not asserting a claim for any misrepresentations made by MDA in the Agreement, nor is ULC making a claim for breach of warranties by MDA contained in the Agreement. Furthermore, implied warranties are not even an issue in this case. The implied warranties of fitness for a particular purpose and merchantability are statutory warranties that arise out of the sale of goods. The Agreement in this case is for the providing of services, not goods.

The Court finds that MDA provided a warranty in its December 20, 2006, title report that the public record information contained in the report was accurately reported from the public record sources available as of the effective date of this report. The disclaimer of warranties provision in the parties' Agreement has no bearing on the warranty provided in the title report. There is no dispute that the information contained in the December 20, 2006, title report was in fact inaccurate. Therefore, the Court finds that MDA breached the warranty it provided to ULC in its December 20, 2006, title report.

C. *Damages*

In its Amended Complaint, ULC is claiming $2,074,587.20 in actual damages. MDA requests that the Court grant summary judgment finding that ULC's damages are limited by the following provision contained in the December 20, 2006, title report:

> MDA's liability for breach of this warranty shall be limited to the actual amount of any loss incurred by you, the maximum amount allowed by applicable law or $25,000, or that amount as limited by your Settlement Services Purchase Agreement and is conditioned upon your enforcing the promissory note and security instrument to the fullest extent provided by law and taking all reasonable steps to protect any interest you may acquire in the real property described in this report. . . .

ULC concedes that limitation applies to ULC's claim for breach of warranty under the title report. However, ULC requests that the Court grant summary judgment finding that the limitation does not apply to ULC's claim for breach of contract under the Agreement and that ULC is entitled to recover actual damages for its breach of contract claim.

The breach of warranty claim and breach of contract claim are entirely separate. A breach of warranty claim evaluates the product itself, while the breach of contract claim focuses on the performance of the contractual obligation. *See Bell Sports, Inc. v. Yarusso*, 759 A.2d 582, 594 (Del. 2000). Section 5(d) of the parties' Agreement states:

> *Exclusive Remedy.* Notwithstanding any other term or provision of this Agreement, the Parties agree that, with respect to any breach or violation of any representation, warranty, obligation, agreement, or other term set forth in this Agreement, the only relief and remedy available to a Party for such breach or violation shall be (i) actual damages, but only to the extent claimable hereunder; (ii) specific performance if granted by a court of competent jurisdiction; or (iii) injunctive or declaratory relief if granted by a court of competent jurisdiction.

Section 9 of the parties' Agreement expressly prohibits amendments to the Agreement without written agreement by the parties. Section 9 also states that the Agreement, "including the schedules and exhibits referred to in and which form a part of this Agreement constitutes the entire agreement

between the Parties and supersedes all prior understandings, oral and written, between the Parties regarding provision of the Services."

It is undisputed that the title report is not a part of the parties' Agreement and that the parties did not enter into a written agreement that would modify Section 5(d) of their Agreement (pertaining to actual damages). Accordingly, the Court cannot find that the $25,000 limitation contained in the title report applies to ULC's breach of contract claim. The Court grants ULC's request for summary judgment on the issue of damages finding that the parties' Agreement allows for actual damages. Actual damages are to be proven at the trial of this matter set for March 10-11, 2011.